THE VILLAGE OF RIVERDALE, Plaintiff-Appellee, v. ALLIED WASTE TRANSPORTATION, INC., *et al.*, Defendants-Appellants.

First District (5th Division)     No. 1—01—3409

Opinion filed September 27, 2002.

Frank & Associates, Ltd., of Chicago (Edward W. Pirok and Carl J. Frank, of counsel), for appellants.

Jeff Diver Group, of Wheaton, and Michael S. Blazer, P.C., of Westchester, for appellee.

JUSTICE QUINN delivered the opinion of the court:

Plaintiff, the Village of Riverdale, filed a complaint for injunctive relief against defendants, Allied Waste Transportation, Inc., Suburban Warehouse, Inc., and Frank M. Ward, Sr., seeking to enjoin defendants from continuing to operate their waste disposal, storage and recycling facility. The complaint alleged defendants were operating the facility without obtaining the requisite permits and license pursuant to applicable statutes and ordinances. A temporary restraining order was entered on January 26, 2001. Following an evidentiary hearing, a preliminary injunction was entered on August 27, 2001. Defendants now appeal that order.

On appeal, defendants argue that the trial court improperly granted a preliminary injunction where plaintiff has an adequate remedy at law.

For the following reasons, we affirm.

I. BACKGROUND

Defendants, Allied Waste Transportation, Inc., Suburban Warehouse, Inc., and Frank M. Ward, Sr., are the lessors/operators of a waste disposal, storage and recycling facility at 13050 South State Street, Riverdale, Illinois. Defendants' activities at the facility included the acceptance, separation, shredding, storage and processing of large quantities of wood, paper, metal, demolition and general debris.

On January 26, 2001, plaintiff, the Village of Riverdale (Village), filed a complaint for injunctive relief and abatement of nuisance, along with an emergency motion for a temporary restraining order. The Village alleged that defendants have engaged in the above-mentioned activities since at least October 1998. The complaint alleged that two fires, one on August 25, 2000, and one on October 21, 2000, commenced on defendants' property in piles of waste. Defendants agreed to cease the receipt of waste and all operations at the facility on October 23, 2000. However, on January 22, 2001, defendants advised plaintiff by letter that they intended to begin accepting loads of "wood waste and other recyclable materials for processing and storage."

The Village's complaint alleged that defendants had not obtained a permit from the Illinois Environmental Protection Agency to operate a waste disposal and storage facility on the property as required by

statute. Defendants also allegedly failed to obtain local siting approval from the Village for operating a pollution control facility or a conditional use permit for operating a wood recycling, solid waste disposal or solid waste storage operation as required by statute. Both the complaint and the emergency motion alleged that defendants' operations represent a continuing fire hazard. The Village's brief on appeal alleged that the wood A-frame structure on defendants' property contains no sprinkler or fire suppression system.

The trial court granted the Village's motion for a temporary restraining order on January 26, 2001. On July 24, 2001, a hearing was held on the Village's motion seeking a preliminary injunction. James Stock, director of building and zoning in the Village, testified that in early 2000 he toured defendants' property. Stock testified that defendants' activities on the property constituted the operation of a recycling and waste transfer facility. These activities are considered conditional uses under the Village's zoning code. Stock also testified as to the conditions on the property, including piles of separated and mixed materials, fuel containers not protected, questionable electric wiring and dilapidated buildings. Stock also testified that fires occurred on defendants' property in July 2000, in August 2000 and on October 21, 2000.

Tyrone Jarrett, fire chief for the Village, testified to the general safety and public health concerns present on defendants' property. Jarret testified that upon viewing defendants' property he had a major concern with the capabilities to suppress fires in the area because the entrances and exits to the area are limited and the water resources are limited. Jarret testified that the October 21, 2000, fire on defendants' property lasted between four and six days.

Rudolph Rinas, assistant fire chief for the Village, also testified that the limited water, the limited means of egress, the tremendous exposures to the A-frame building, the propane tanks, the aboveground storage tanks, the large wood chip pile and the past fires all represented serious fire safety concerns. Jeffrey Diver, special environmental counsel to the Village, also testified to the fire hazards and general health and safety issues present on defendants' property.

Zenovia Evans, mayor of the Village, testified that the Village had not issued defendants a business license for the year 2001 because defendants were not in compliance with the Village code, safety requirements, or statutory requirements for the State of Illinois. Evans testified that if a business tried to operate without a business license, police and building inspectors would be sent to shut it down and tag the building.

Paul Howe, district manager of Allied Waste, testified that follow-

ing the October fire, defendants "agreed to certain restrictions on inbound material and how we would conduct our business activities during the cleanup of the fire that occurred in October." Howe testified that he memorialized this agreement to voluntarily cut back operations in a letter to the Village's attorney. Howe also testified that defendants were not issued a business license for the year 2001.

Following the hearing, on August 27, 2001, the trial judge ordered that the temporary restraining order continue as a preliminary injunction. Specifically, the court held:

"I think that a preliminary injunction is appropriate. I think a preliminary injunction couched in the terms 'until such time as the court is satisfied that the activity enjoined has been licensed and/or the respondent Allied, Suburban, in whatever persona they intend to proceed, exhausts its remedy in challenging the licensing decision made by the Village of Riverdale.' "

Defendants now appeal that order.

II. ANALYSIS

Defendants argue that the trial court erred in granting a preliminary injunction in this case. The bulk of defendants' argument is centered upon the allegation that the injunction was improper where the Village had an adequate remedy at law. Namely, defendants maintain that because they were not granted a business license for the year 2001, they were unable to operate their facility and an injunction was unnecessary.

■ A reviewing court will reverse a trial court's order granting a preliminary injunction only when it constitutes an abuse of discretion. *Franz v. Calaco Development Corp.*, 322 Ill. App. 3d 941, 946 (2001). As a general rule, a preliminary injunction will only be granted where the plaintiff shows it: (1) has a clearly ascertainable right that needs protection; (2) will suffer irreparable harm without the protection; (3) has no adequate remedy at law; and (4) is likely to succeed on the merits. *Prairie Eye Center, Ltd. v. Butler*, 305 Ill. App. 3d 442, 445 (1999). Where, however, an injunction is sought by a public official or body pursuant to express authorization of a statute, the requirements of the statute control rather than those traditional matters to which we have referred. *People ex rel. Hartigan v. Stianos*, 131 Ill. App. 3d 575, 580 (1985); *People ex rel. Edgar v. Miller*, 110 Ill. App. 3d 264, 269 (1982); *People ex rel. Carpentier v. Goers*, 20 Ill. 2d 272, 276 (1960); *People v. Keeven*, 68 Ill. App. 3d 91, 96-97 (1979); *City of Highland Park v. County of Cook*, 37 Ill. App. 3d 15, 20 (1975).

When seeking injunctive relief that is expressly provided for by statute, a plaintiff is not required to plead or prove irreparable harm

and an inadequate remedy at law. *City of Chicago v. Piotrowski*, 215 Ill. App. 3d 829, 834-35 (1991). The state or agency need only show that the statute was violated and that the statute relied upon specifically allows injunctive relief. *Sadat v. American Motors Corp.*, 104 Ill. 2d 105, 110-12 (1984). The principle underlying the willingness of the courts to issue statutory injunctions to public bodies to restrain violations of a statute is that harm to the public at large can be presumed from the statutory violation alone. *People v. Keeven*, 68 Ill. App. 3d 91, 96.

■ Section 11—13—15 of the Illinois Municipal Code (65 ILCS 5/11—13—15 (West 2000)) provides:

"In case any building or structure, including fixtures, is constructed, reconstructed, altered, repaired, converted, or maintained, or any building, including fixtures, or land, is used in violation of an ordinance or ordinances adopted under Division 13, 31 or 31.1 of the Illinois Municipal Code, or of any ordinance or other regulation made under the authority conferred thereby, the proper local authorities of the municipality *** may institute any appropriate action or proceeding (1) to prevent the unlawful construction, reconstruction, alteration, repair, conversion, maintenance, or use, (2) to prevent the occupancy of the building, structure, or land, (3) to prevent any illegal act, conduct, business, or use in or about the premises, or (4) to restrain, correct, or abate the violation.***

In any action or proceeding for a purpose mentioned in this section, the court with jurisdiction of such action or proceeding has the power and in its discretion may issue a restraining order, or a preliminary injunction, as well as a permanent injunction, upon such terms and under such conditions as will do justice and enforce the purposes set forth above." 65 ILCS 5/11—13—15 (West 2000).

The Village sought to enjoin defendants from the operation of their facility pursuant to the statutory authorization in section 11—13—15 of the Illinois Municipal Code (65 ILCS 5/11—13—15 (West 2000)). The Village need only show that the statute was violated and that the statute relied upon specifically allows injunctive relief. *Sadat v. American Motors Corp.*, 104 Ill. 2d at 110-12.

In the present case, the record clearly established that defendants' activities on the property in question constituted the operation of a wood recycling, waste storage, or waste disposal facility. James Stock testified that defendants' activities on the property constituted the operation of a recycling and waste transfer facility. These activities are considered conditional uses under the Village's zoning code. Defendants never obtained a conditional use permit for such activity. Zenovia Evans, the mayor of the Village of Riverdale, testified that

defendants were not issued a business license for the year 2001 because defendants were not in compliance with Village codes, fire safety regulations and safety regulations. Evans testified that defendants cannot operate their facility without a business license.

Defendants' reliance on *Sadat v. American Motors Corp.*, 104 Ill. 2d 105, is unavailing. In *Sadat*, the sole question presented was whether a complaint for a mandatory injunction that does not allege the traditional prerequisites for equitable relief may nevertheless state a cause of action under the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (Act) (15 U.S.C. § 2301 *et seq.* (1976)). Section 110(d)(1) provides:

> "[A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief[.]" 15 U.S.C. § 2310(d)(1) (1976).

Plaintiff argued that the Act's reference to "equitable relief" authorizes the court to grant a mandatory injunction. This court disagreed. The appellate court held that the Act's authorization for the grant of equitable relief in private actions does not mean that the plaintiff need not establish the requirements for granting of equitable relief. *Sadat*, 114 Ill. App. 3d at 381.

The supreme court agreed. The supreme court began by noting that cases in which plaintiffs were not required to plead and prove the traditional elements to obtain an injunction involved plaintiffs seeking equitable relief created by statute. The court cited several cases where injunctive relief was expressly authorized as a means of enforcing compliance with the respective statutes. The court then distinguished the instant case. "Rather than an express statutory grant of authority to issue injunctions, section 110(d)(1) of the Act (15 U.S.C. sec. 2310(d)(1) (1976)) is a generalized provision for civil actions afforded to consumers damaged by the failure of a warrantor to meet Magnuson-Moss warranty obligations." *Sadat*, 104 Ill. 2d at 113. The court pointed to the sharp contrast with section 110(c)(1) of the Act (15 U.S.C. § 2310(c)(1) (1976)), which specifically provides:

> "[T]he district courts of the United States shall have jurisdiction of any action brought by the Attorney General (in his capacity as such), or by the Commission by any of its attorneys designated by it for such purpose, to restrain (A) any warrantor from making a deceptive warranty with respect to a consumer product, or (B) any person from failing to comply with any requirement imposed on such person by or pursuant to this chapter or from violating any prohibition contained in this chapter. Upon proper showing that,

weighing the equities and considering the Commission's or Attorney General's likelihood of ultimate success, such action would be in the public interest and after notice to the defendant, a temporary restraining order or preliminary injunction may be granted without bond." 15 U.S.C. § 2310(c)(1976).

The supreme court also pointed out that "statutes expressly authorizing injunctive relief do so on behalf of either a public official in his capacity as enforcer of a regulatory scheme or, alternatively, provide for the private actions which may be necessary to restrain public officials from acting in a manner inconsistent with that which is prescribed by statute." *Sadat*, 104 Ill. 2d at 113. The statutory violation implies injury to the general public. "Such injury necessitates the statutory authorization for equitable relief and supplants the traditional equitable pleading requirements." *Sadat*, 104 Ill. 2d at 113. The court held that the Magnuson-Moss Warranty Act's general grant of equitable relief did not evince congressional intent to dispense with the traditional equitable pleading requirements. *Sadat*, 104 Ill. 2d at 115.

■ In applying *Sadat* to the case at bar, it is clear that the Village need not plead and prove an inadequate remedy at law. Our case is directly the type of case contemplated by *Sadat* where dispensing of the traditional requirements would be appropriate. First, the language of section 11—13—15 of the Illinois Municipal Code (65 ILCS 5/11—13—15 (West 2000)) *specifically* provides authority for the court with jurisdiction to "issue a restraining order, or a preliminary injunction, as well as a permanent injunction." Second, this action does not involve private parties seeking to enforce solely private rights. The Village of Riverdale, as a governing public body, sought the injunction as a tool to prevent defendants from operating the facility. This is a case where a public body brought an action, alleging violations of its ordinances and statutes, with resulting damage to its residents, and therefore, plaintiff need not plead and prove an inadequate remedy at law. See *City of Highland Park v. County of Cook*, 37 Ill. App. 3d 15, 20 (1975).

Defendants' claim in their reply brief that the cases where an injunction has been issued absent a showing of inadequate remedy at law are inapplicable because "all of the cases represent a continuing problem that cannot be stopped" is unpersuasive. First, defendants are utilizing circular reasoning. They are basically arguing that this case is different because the complained-of behavior has been stopped, which is essentially reiterating their adequate-remedy-at-law argument that an injunction is unnecessary. Also, the record does not support defendants' claim. The record established that following the fires

on the property, defendants agreed to cease operations on October 23, 2000. Although Paul Howe's testimony attempted to qualify the agreement as voluntarily "restricting" activity, the letter that memorialized the agreement specifically stated defendants agreed to "cease further receipts of wood waste, recyclable materials or other materials to be processed or stored for processing at [their] leasehold property." On January 22, defendants, through their attorneys, sent a letter to plaintiff memorializing their intent to resume accepting loads of wood waste and other recyclable materials for processing and storage at defendants' facility. In addition, Howe acknowledged in a separate letter sent to the Village's attorney:

"At this time, we have an inventory of mulched material that was untouched by the fire. It is our intention to color and bag the chipped material as soon as possible, as orders allow. As previously agreed, prior to commencing any chipping activity or receipt of any new inbound product, we would provide 5 days' notice to the Village."

Evidence indicates, however, that defendants had, in fact, received waste for recycling at the facility in contravention of that agreement and without acquiring the necessary permit and license. Jim Camalick, Suburban's site manager, testified during his deposition that defendants had imported approximately 400 tons of new waste onto the property in November and December 2000 and January 2001.

We agree with the Village that defendants' brief cites numerous cases which stand merely for general propositions of the laws governing injunctions, and do not involve statutorily authorized injunctions as tools of enforcement. Defendants' repeated assertions in their reply brief that plaintiff's cited cases holding that plaintiff need not show an inadequate remedy at law exists predate their general cases is of no assistance to them either. Defendants have not, and cannot, establish that *Sadat* or its predecessors are not good law and directly applicable to the facts at hand.

Since it is clear from the record that defendants continued to operate their facility without the appropriate license and permit in violation of the statute, the trial court properly enjoined defendants from operating their waste facility. See *City of Chicago v. Piotrowski*, 215 Ill. App. 3d at 835. We conclude that the Village was not required to show an inadequate remedy at law, as would be required if a private party sought equitable relief to protect private rights.

However, even if we were to assume *arguendo* that the Village was required to plead and prove that no adequate remedy at law existed, it has satisfied that burden. The Village asserted claims under the Illinois Criminal Code of 1961 (720 ILCS 5/47—5(8) (West 2000)) and

for common law nuisance in its complaint. Again, defendants' entire argument in response hinges on the assertion that an injunction is unnecessary where defendants have not been issued a business license for 2001 and are, therefore, unable to operate their facility. However, when the trial court reversed defendants' reasoning and posited to counsel that if it was his position that his client would not operate until receiving the license, "what does the injunction cost you at this point?" Counsel had no response. More importantly, defendants' argument bears little weight where, as previously noted, the record has demonstrated that defendants have expressed their intention to resume operations and have, in fact, already continued to operate the waste facility in absence of the required business license.

Defendants make much ado regarding Mayor Evans' testimony that she would direct the police to shut down defendants' facility if they attempted to operate without a business license. However, as the Village aptly points out, the mayor does not possess the authority to carry out such conduct. The Village's brief sets forth in detail the governing municipal codes and the remedies provided therein. For example, section 1.20.010 of the Village of Riverdale Code of Ordinances provides:

> "A. Any person violating any of the provisions or failing to comply with any of the mandatory requirements of the ordinances of the Village of Riverdale, shall be guilty of an offense. Except in cases where different punishment is prescribed by any ordinances of the Village, any person convicted of an offense under the ordinances of Riverdale shall be punished by a fine of not less than thirty dollars nor more than five hundred dollars." Riverdale Code of Ordinances § 1.20.010 (eff. October 24, 2000).

In addition, sections 8.04.200 (garbage and refuse), 8.60.090 (failing to abate a fire hazard) and 17.03.14 (penalty for violation of zoning ordinances) of the Village of Riverdale Code of Ordinances also provide fines as penalties for an offense. Riverdale Code of Ordinances §§ 8.04.200, 8.60.090, 17.03.14 (eff. October 24, 2000).

■ For a legal remedy to be deemed adequate, it must be clear, complete, and as practical and efficient to the ends of justice in its prompt administration as the equitable remedy. *Wilson v. Illinois Benedictine College*, 112 Ill. App. 3d 932, 938 (1983); *City of Chicago v. Festival Theatre Corp.*, 91 Ill. 2d 295, 314 (1982). "This court has consistently recognized that the criminal law is not such a remedy where it is shown ineffective to prevent the continuance of the nuisance." *City of Chicago v. Festival Theatre Corp.*, 91 Ill. 2d at 314.

For example, the supreme court held that the imposition of even the maximum fine of $200 a day may not be enough to dissuade

defendants from an enterprise offering sexual massages. *City of Chicago v. Cecola*, 75 Ill. 2d 423, 429 (1979); see also *Village of Spillertown v. Prewitt*, 21 Ill. 2d 228 (1961) (defendant, having been arrested twice, claimed before Village board he would continue strip-mining despite imposition of fines under ordinance); *People ex rel. Kerner v. Huls*, 355 Ill. 412 (1934) (criminal prosecution inadequate remedy where defendant's statements showed he would pay statutory penalties but still not submit his cattle for tuberculin tests); *People ex rel. Dyer v. Clark*, 268 Ill. 156 (1915) (numerous criminal convictions of keeper of brothel did not deter defendant from continuing the activity); *City of Chicago v. Geraci*, 30 Ill. App. 3d 699 (1975) (where the criminal code did not effectively prevent the nuisance of masturbatory practices, the trial court did not abuse its discretion in issuing an injunction to close defendant's massage and bath enterprise); *County of Lake v. Spare Things*, 27 Ill. App. 3d 179 (1975) (argument that monetary penalty constituted adequate legal remedy for failure to obtain use permit under zoning codes was rejected); *City of Chicago v. Larson*, 31 Ill. App. 2d 450 (1961) (injunction barring defendants from interfering with the inspection of a building alleged to have been in violation of health and safety codes was upheld where the act complained of constituted a menace to the public health, safety or welfare, and where the enforcement of the criminal law was merely incidental to the relief sought).

In applying these cases to the case at bar, it is clear that the minimal monetary fines provided in the Village's municipal ordinances would not lend a remedy "as clear, complete, practical, and effective as the equitable remedy." *City of Chicago v. Festival Theatre Corp.*, 91 Ill. 2d at 314. In *City of Chicago v. Festival Theatre Corp.*, the supreme court held that an injunction which barred live obscene stage shows as common law nuisances must be reversed where it was not shown that criminal prosecution was an inadequate remedy for the harm caused. The allegations that the defendants presented an allegedly obscene performance despite two previous arrests for similar performances within 60 days were insufficient factors to persuade the court to conclude that the legal remedy was inadequate. *City of Chicago*, 91 Ill. 2d at 314. The court found that the injunction issued within a few months of the first arrest and before criminal actions were completed was premature. *City of Chicago*, 91 Ill. 2d at 315. The court ruled that although a common law nuisance action may hereafter be maintained against the defendants, at that time, the evidence did not disclose that criminal prosecution would be an inadequate remedy. *City of Chicago*, 91 Ill. 2d at 315. In addition, the court noted that it was not claimed that this is a case where a risk to public health would require expedited action by a court action through its equity powers.

■ The case at bar is directly distinguishable. The issuance of an injunction at this point could not be considered premature. As previously demonstrated, defendants intend to continue, and have, in fact, continued operations at the facility. In addition, the Village has alleged that this is the type of case where an extreme risk to the public health and safety, as well as to property and the environment, exists if defendants' operations continue. Therefore, we hold that action in equity was required, and the trial court properly granted the Village's request for a preliminary injunction.

For the foregoing reasons, we affirm.

Affirmed.

GREIMAN and REID, JJ., concur.