2023 IL App (1st) 230199-U

SECOND DIVISION
April 25, 2023

No. 1-23-0199

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| VILLAGE OF RIVERDALE, a Municipal Corporation, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | Nos.   20 M6 2446 |
| | ) |         20 M6 2449 |
| AMERICAN TRANSLOADING SERVICES, MAMA'S | ) |         20 M6 8802 |
| COIN LAUNDRY, INC., and CHICAGO SALT | ) | |
| COMPANY, | ) | Honorable |
| | ) | Michael B. Barrett, |
| Defendants-Appellants. | ) | Judge Presiding |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgement.

**ORDER**

¶ 1    *Held*: Vacated. Preliminary injunction was inappropriate, as circuit court failed to balance equities, and granting relief would result in permanent closure of defendants' businesses.

¶ 2    Plaintiff, the village of Riverdale, filed suit in three separate cases (later consolidated), each of which sought to prevent one of three different defendant companies from operating in the village without a license. Defendants responded with counterclaims that, among other things, challenged the constitutionality of a new ordinance on which the village relied to deny their applications for license renewal. At the village's request, the circuit court issued a preliminary injunction preventing defendants from operating their businesses. Defendants appeal that

injunction, arguing that the circuit court did not preserve the *status quo* and failed to properly balance the equities before issuing the injunction. We agree and vacate the preliminary injunction.

¶ 3     The facts of these cases are straightforward. The village of Riverdale (the Village) recently amended its municipal code, allowing the Village to deny an application for a business license if the applicant had any outstanding village fines, taxes, or property taxes. See Riverdale Municipal Code § 5.02.180. Shortly thereafter, the Village enacted an exemption to this ordinance if the delinquent applicant had entered into a payment plan of two years or less and paid 10 percent of the delinquency directly to the Village. *Id.* §5.02.185 (repealed by Ordinance 2021-35).

¶ 4     In mid-2019, the Village refused to renew each of the three defendants' business licenses for the sole reason that defendants were past due on real estate taxes for their property in the village and had not complied with the payment-plan exemption. But defendants continued to operate their businesses.

¶ 5     Section 5.02.210 of the Riverdale Municipal Code authorizes the Village, among other remedies, to seek injunctive relief to stop or abate a violation of many provisions, including the licensure requirements set forth above. See *id*. § 5.02.210(c). So in early 2020, the Village filed three separate actions for injunctive relief to force the three defendant businesses to cease operations without a license.

¶ 6     Each defendant filed an identical counterclaim, seeking a declaration that sections 5.02.180 and 5.02.185 were unconstitutional and thus unenforceable. They brought other claims under two separate Illinois statutes—the Illinois Consumer Fraud and Deceptive Practices Act and the Personal Information Privacy Act (Counts 4 and 5 of the counterclaims).

¶ 7     The circuit court consolidated these three identical cases. In December 2021, the court ruled on the question of constitutionality raised by the counterclaims. The court found that the exemption the Village had adopted (section 5.02.185), which allowed for a license if the delinquent applicant had made a down payment directly to the Village and entered into a payment plan with the county, was an unconstitutional encroachment on the authority of Cook County to collect property taxes.

¶ 8     But the court determined that the rule itself, denying a license based on the applicant's tax delinquency (section 5.02.180), was a valid exercise of the Village's home-rule authority. Because that section was constitutional, the court reasoned, defendants' request for injunctive relief against the operation of that ordinance failed. The court "reserve[d] its ruling" on the counterclaims related to the Illinois statutes on consumer fraud and information privacy.

¶ 9     With that ruling upholding the validity of section 5.02.180, the Village moved for a preliminary injunction against each defendant to cease doing business without a license.

¶ 10    Defendants raised several arguments in response. From what we can discern, none of the defendant companies denied the underlying fact—they were delinquent on their property taxes. They did, however, raise a number of procedural arguments and claimed that a preliminary injunction was premature, as they were seeking to challenge their delinquencies through administrative remedies available. Notably, during the evidentiary hearing, each of the defendant companies put forth sworn and uncontested evidence that they would go out of business if forced to cease operations—their clients would find other vendors to replace them if defendants suffered even a short delay in the operation of their businesses.

¶ 11    In late January 2023, in a written order, the court granted the Village's motion for preliminary injunction, finding that the Village had met each of the four requirements for

injunctive relief. The court found that the Village had a "clearly ascertained right in need of protection," namely the protection of public health, safety, and welfare. Next, the Village would suffer irreparable harm without a preliminary injunction, in that "the Village will have no authority to prevent the business from operating." The court found that the Village had no adequate remedy at law and "[s]ince there was no substantive dispute to the allegations offered by the Village, there is a strong likelihood for success on the merits."

¶ 12    Defendants appealed and moved for a stay of the circuit court's preliminary injunction. A different panel of this court granted that stay pending the outcome of this appeal. So the preliminary injunction has not taken effect.

¶ 13    Preliminary injunctions are " 'an extraordinary remedy, and courts do not favor their issuance.' " *Guns Save Life, Inc. v. Raoul*, 2019 IL App (4th) 190334, ¶ 36 (quoting *Ford Motor Credit Co. v. Cornfield*, 395 Ill. App. 3d 896, 903 (2009)). A preliminary injunction does not determine controverted rights or decide the merits of a case but, rather, preserves the rights of the parties or the state of affairs until the case can be decided on the merits. *Kalbfleisch ex rel. Kalbfleisch v. Columbia Community Unit School No. 4*, 396 Ill. App. 3d 1105, 1112 (2009). Generally, this means that a preliminary injunction should "preserve the *status quo* of the parties rather than alter it." *Id.* at 1117. Like any other equitable remedy, preliminary injunctive relief is not entirely controlled by technical legal rules; it is subject to the discretion and conscience of the circuit court, taking into account the equities and potential hardships under the specific facts of each case. *Id.* at 1109.

¶ 14    We review the grant of a preliminary injunction for an abuse of discretion. *World Painting Co., LLC v. Costigan*, 2012 IL App (4th) 110869, ¶ 12. We will find error only if the ruling is so arbitrary or unreasonable that no reasonable person would adopt the trial court's

view. *Id.* The failure to apply the proper test or consider the appropriate criteria may itself be an abuse of discretion. *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 99 (2006); *Travelport, LP v. American Airlines, Inc.*, 2011 IL App (1st) 111761, ¶ 49.

¶ 15   Though injunctions are not completely controlled by technical rules, there are some well-established prerequisites. To obtain an injunction of any kind, preliminary or permanent, the movant must establish (1) a clear right in need of protection, (2) the lack of an adequate remedy at law, and (3) irreparable harm if the injunction does not issue. *County of Kendall v. Rosenwinkel*, 353 Ill. App. 3d 529, 538 (2004). Of course, there is a fourth requirement—the movant obviously must also prevail on the underlying merits of its case. But that fourth requirement varies depending on the nature of the injunction—for a permanent injunction, the movant must conclusively prevail; for a preliminary injunction, the movant must show a likelihood of success on the merits. See *id.*

¶ 16   But when, as here, a statute or ordinance gives the government the right to enforce its provisions through injunctive relief, these first three traditional prerequisites for injunctive relief need not be satisfied. See *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 277 (2003). We do not require the government to prove irreparable harm or the absence of a legal remedy because we presume harm from the violation of the statute or ordinance. See *id.*; *Sadat v. American Motors Corp.,* 104 Ill. 2d 105, 113 (1984). And the statute or ordinance, itself, provides the government with the right in need of protection.

¶ 17   In this unique context of a governmental-enforcement injunction, the issues thus collapse to simply a question on the merits: did the government prove a violation of the statute or ordinance (or, in the context of a preliminary injunction, a likely violation)? See *Cryns*, 203 Ill. 2d at 277. In one recent unpublished order cited by defendants for persuasive purposes, which

we find quite persuasive, we referred to this as a "streamlined test" for injunctive relief. *County of McHenry v. Waters*, 2021 IL App (2d) 210027-U, ¶ 45 (unpublished order under Supreme Court Rule 23).

¶ 18    Here, as noted at the outset, section 5.02.210 of the Riverdale Municipal Code authorizes the Village to seek injunctive relief to order an unlicensed business to cease operations. See Riverdale Municipal Code § 5.02.210(c). So the preliminary injunctive relief sought here would qualify under the more streamlined version for injunctive relief; the Village need not establish the traditional first three prerequisites. And as noted above, the circuit court found that the Village had a likelihood of succeeding on the merits of its claim that the ordinance was violated.

¶ 19    And that, says the Village, is the end of the discussion. The Village proved a likely violation of its licensure ordinance, so a preliminary injunction was appropriate, full stop. There is no need to continue the analysis beyond this single determination, no need to discuss the equities of the case, to balance the hardships, as we might in a traditional motion for preliminary injunction. See *Kalbfleisch*, 396 Ill. App. 3d at 1109.

¶ 20    For a *permanent* injunction conclusively resolving the matter, the Village might have a stronger argument; we understand why a court might think that a balancing of equities is unnecessary when the injunction is brought by the government based on an ordinance violation. See *City of Rock Falls v. Aims Industrial Services, LLC*, 2022 IL App (4th) 220208-U, ¶ 50 (unpublished order under Supreme Court Rule 23), *appeal allowed*, 201 N.E.3d 573 (Ill. 2023). Other courts have reasoned, to the contrary, that a court should balance the equities even when the government is seeking a permanent injunction to enforce an ordinance or statute. See, *e.g.*, *Rosenwinkel*, 353 Ill. App. 3d at 539 (finding it necessary to consider balance of equities "even where the three traditional elements necessary to secure a permanent injunction are supplanted

by a statute expressly authorizing the State or governmental agency to seek injunctive relief");

*Midland Enterprises v. City of Elmhurst,* 226 Ill. App. 3d 494, 505 (1993) (balancing equities after determining that traditional elements of equitable relief need not be shown).

¶ 21    But regardless on which side we might fall on this question in the context of a permanent injunction, we have little trouble concluding that, before issuing a *preliminary* injunction, the court must consider the equities and hardships in the particular case. A permanent injunction involves a conclusive determination on the merits—a final judgment. *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 222 (2000). A preliminary injunction obviously does not. Here, for example, we are not at the end of this controversy. This matter remains ongoing in the circuit court. The circuit court has found it "likel[y]" that the government has proven its case but has not conclusively ruled, to say nothing of other counterclaims on which the circuit court has thus far reserved ruling.

¶ 22    The term itself says it all—it is *preliminary* action, issued before the case is completed, before the merits have been conclusively resolved. It should not be controversial to say that, when a court issues injunctive relief at the outset or in the middle of a case, the court must be cognizant of the effects of that preliminary action. Is the court preserving or upsetting the *status quo*? Will the preliminary relief have such a detrimental impact on one of the parties as to effectively decide the case before it is conclusively resolved? Would a preliminary injunction prevent harm or cause harm? Is the court putting a pause on certain activity until the controversy can be decided, or is the court allowing the rights or property at issue to be dissipated or destroyed before the case is completed, thus rendering the final disposition meaningless?

¶ 23    While certain prerequisites for a preliminary injunction fall by the wayside when a municipality is using injunctive relief to enforce an ordinance, we cannot accept that, mid-case,

the court should turn a blind eye to whether its preliminary relief will do irreparable damage to one of the parties or upend the state of affairs in such a way as to render the final decision moot or irrelevant. We cannot imagine that, based solely on a finding that the government is *likely* to succeed in proving an ordinance violation, the court is foreclosed from any consideration of the traditional equities that guide the court—that the court *must* issue a preliminary injunction, even if doing so will destroy the fruits of the dispute. We thus agree with the recent decision in *Waters*, 2021 IL App (2d) 210027-U, ¶ 45, that "[u]nder either the traditional, four element test or the more streamlined test available to a government entity, the trial court must also balance the equities to determine the relative inconvenience to the parties."

¶ 24    We are not persuaded otherwise by a case cited by the Village in which it was involved over twenty years ago, *Village of Riverdale v. Allied Waste Transportation, Inc.*, 334 Ill. App. 3d 224 (2002). That case likewise involved the Village's attempt to order a business to cease operations by way of preliminary injunction. *Id.* at 226. But the only question there was whether the Village was required to satisfy the traditional common-law prerequisite of showing that it lacked an adequate remedy at law. *Id.* The answer to that question should be obvious given our discussion above—the Village was not required to do so, as it was enforcing an ordinance that provided for injunctive relief to secure its enforcement. *Id.* at 232. The court was not confronted with the argument that the circuit court should have balanced the equities before issuing preliminary injunctive relief, and this court had no occasion to comment on that question.

¶ 25    For the reasons given above, the circuit court should have balanced the equities and relative hardships to the parties before issuing the preliminary injunction. In other words, the court should have considered whether the Village demonstrated that it would suffer more harm without a preliminary injunction than defendants would suffer if the injunction were granted. See

*Alms v. Peoria County Election Commission*, 2022 IL App (4th) 220976, ¶ 26. The failure to undertake this analysis was error. *Travelport, LP*, 2011 IL App (1st) 111761, ¶ 49; see *Paul*, 223 Ill. 2d at 99. And the error was prejudicial in this case; in our view, a balancing of the equities in this case strongly favored denying, not granting, preliminary injunctive relief.

¶ 26    At the hearing on the preliminary injunction, defendants were clear, via unrebutted sworn testimony, that even a preliminary injunction would cause their businesses to *permanently* close, their clients turning elsewhere for their business. The Village cites its understandable interest in not allowing unlicensed businesses to operate within its community, including the fact that the Village should not be required to provide government services to a company that does not provide its share of revenue to a municipality that is starving for tax dollars.

¶ 27    The Village's interest is no doubt legitimate, but it does not overcome the permanent shuttering of a business before that business has had the opportunity to challenge the very governmental action causing it to close—here, the adoption of an ordinance that disqualifies it from licensure. Monetary damages to compensate for commercial injury are one thing, but the loss of a business entirely is an irreparable and incalculable loss. See *Bio-Medical Laboratories v. Trainor*, 68 Ill. 2d 540, 549 (1977) (affirming grant of preliminary injunction to allow company to do business in advance of final judgment; prohibiting company from operating would deprive company of nearly all its revenue and close its business, thus "caus[ing] damages of an uncertain magnitude"); *CC Disposal, Inc. v. Veolia ES Valley View Landfill, Inc.*, 406 Ill. App. 3d 783, 789 (2010) ("It is impossible to put a dollar value on" loss of one's business).

¶ 28    Should defendants ultimately prevail, it would be a hollow victory at best, the fruits of any such victory having long been spoiled; defendants would have lost the case, for all practical

purposes, before a final judgment. Defendants' interest thus heavily favors the denial of a preliminary injunction forcing them to cease operation.

¶ 29    We would factor in, as well, that as best we can tell, the work in the circuit court seems to be nearing completion. The circuit court has resolved the constitutional question (albeit not in a final and appealable judgment). Other counterclaims remain, but we see no reason why those claims could not be resolved in an expedited fashion. So even if the Village is forced to endure some additional time with defendants operating without a license, we would hope and expect that this amount of time could be kept to a minimum. (And as defendants note, the Village remains free to cite and fine defendants for operating their businesses without a license, though we understand that does not wholly address the Village's concerns.)

¶ 30    At this preliminary stage, we express no conclusive opinion on the trial court's adjudication of the constitutionality of section 5.02.180. We would agree that, on preliminary review, it appears that the Village has a likelihood of success on the merits of its case; nothing we have written above should suggest otherwise. But even when a party is likely to succeed, the court must be cognizant of the harm that a preliminary injunction could inflict on the parties. See *Guns Save Life*, 2019 IL App (4th) 190334, ¶ 67. Here, given the incalculable and irreversible injury to defendants that would result, it was error to issue the preliminary injunction.

¶ 31    The judgment of the circuit court is vacated.

¶ 32    Vacated.