THE COUNTY OF KENDALL, Plaintiff-Appellee, v. MICHAEL ROSENWINKEL et al., Defendants-Appellants.

Second District Nos. 2—03—1028, 2—03—1216 cons.

Opinion filed November 5, 2004.

Daniel J. Kramer, of Law Offices of Daniel J. Kramer, of Yorkville, for appellants.

Timothy J. McCann, State's Attorney, of Yorkville (Eric Weis, Assistant State's Attorney, of counsel), for appellee.

JUSTICE KAPALA delivered the opinion of the court:

Defendants, Michael Rosenwinkel, Tamara Rosenwinkel, John Rosenwinkel, and Susan Rosenwinkel, appeal orders entered by the circuit court of Kendall County imposing fines (No. 2—03—1216) and ordering the removal of a grain bin (No. 2—03—1028) that was constructed too close to a roadway in violation of section 7.00(H)(3)(b) of the Kendall County zoning ordinance (Kendall County Zoning Ordinance § 7.00(H)(3)(b) (eff. ___)). In case No. 2—03—1028, defendants contend that the trial court abused its discretion in issuing the mandatory injunction. In case No. 2—03—1216, defendants contend that plaintiff, the County of Kendall (the County), failed to prove each and every element of the section 7.00(H)(3)(b) violation, and that section 5—12017 of the Counties Code (55 ILCS 5/5—12017 (West 2002)), authorizing penalties for zoning ordinance violations, is unconstitutional. In case No. 2—03—1028, we reverse and remand with directions. In case No. 2—03—1216, we affirm in part, reverse in part, and remand with directions.

## I. BACKGROUND

On May 2, 2002, the County filed complaints in Kendall County case Nos. 02—OV—19 and 02—OV—20, alleging that Michael and Tamara, respectively, committed a zoning violation. On May 31, 2002, identical complaints were filed in Kendall County case Nos. 02—OV—38 and 02—OV—39 against John and Susan. It was alleged in the complaints that on August 14, 2000, and at all times since that date, Michael and Tamara were tenants and John and Susan were owners of the farm located at 12621 Galena Road, Little Rock Township, Kendall County (the subject property). It was also alleged that since August 14, 2000, a grain bin has been located on the subject property that was less than 150 feet from the center line of the adjacent Jeter Road, in violation of section 7.00(H)(3)(b) of the zoning ordinance. The County alleged further that defendants have failed to bring the property into compliance with the ordinance, despite demands by the Kendall County planning, building, and zoning department (zoning department). Pursuant to section 5—12017, the County requested an order enjoining defendants from permitting the grain bin to be less than 150 feet from the center line of Jeter Road, an order finding each defendant guilty of an ordinance violation, and the imposition of a fine of $500 per week from August 14, 2000, to the date upon which defendants abate the ordinance violation.

On May 31, 2002, in Kendall County case No. 02—CH—77, predicated upon a violation of section 7.00(H)(3)(b) of the Kendall County zoning ordinance, the County filed a petition in chancery for a

permanent injunction. The petition alleged that on August 14, 2000, defendants had begun construction of a foundation for a grain bin and that on the same date a stop-work order was posted on the subject property. The County further alleged that defendants' request for a variance for the grain bin was denied on April 24, 2001. The County requested that a permanent injunction be issued, permanently enjoining and restraining defendants and their agents, lessees, and successors from violating section 7.00(H)(3)(b) on the subject property, and that defendants be ordered to immediately remove the grain bin.

The record reveals that the subject property is an approximately 19-acre rectangular parcel of land, improved with various agricultural buildings, a grain elevator, several metal grain bins, and a two-story farmhouse. The subject property is bounded by Galena Road on the south, and Jeter Road runs north and south on the subject property's eastern edge. Galena Road is a well-traveled arterial road and Jeter Road is lightly traveled. There are 10 metal grain bins on the subject property, including the bin that is the subject of this dispute. The grain bins are located in an L-shaped pattern such that seven are lined up parallel to Galena Road and three to Jeter Road. Of the grain bins lined up parallel to Jeter Road, the one that is the subject of this dispute is the northernmost.

The proceedings on the ordinance violation complaints and the petition for a permanent injunction were heard simultaneously by the trial court over three dates in July, September, and October 2002. The parties entered into a written stipulation providing in relevant part that on or about January 5, 2002, and at all times since, John and Susan have been the owners of the subject property; that on August 14, 2000, and at all times since, Michael and Tamara have been the tenants of the subject property; that the subject property was zoned A-1 at all relevant times; that sections 7.00(H)(3)(a) and (H)(3)(b) of the zoning ordinance provide that an accessory structure located in an A-1 zoning district must not be closer than 150 feet from the center lines of all adjacent roads; that the subject grain bin is located less than 150 feet from the center line of Jeter Road, specifically 60.51 feet from the center line of Jeter Road; and that on August 14, 2000, and at all times since, no variance for the grain bin or permit for construction of the grain bin had been obtained.

The County called Brian Holdiman, a code compliance officer for Kendall County, who testified that he and James Smith, another code compliance officer, went to the subject property on August 14, 2000, to stop work on a grain bin that was under construction without a permit. At that time, only the forms for the grain bin's concrete base were in place. Smith told Michael that he needed a permit for the grain bin

and asked him to apply for one. Michael said that he would do so. On November 16, 2000, Holdiman sent Michael a letter regarding the construction that was proceeding on the subject property, referencing the fact that Michael was advised to stop work on or about August 14, 2000. On cross-examination, Holdiman admitted that there was no written stop-work order in the zoning department's file on the subject property. Holdiman also indicated that he never had a conversation with any of the other three defendants regarding the grain bin.

James Smith testified that he and Holdiman visited the subject property on August 14, 2000. On that date, Smith observed a crew forming up a concrete pad for a grain bin. Smith advised Michael that he should stop work on the grain bin until a permit was in place for the structure. Smith said that he told Michael that he would need to apply for an agriculturally-exempt building permit or zoning certificate. Smith explained that a written stop-work order is typically posted on the property when no one is present, but in this case, he gave the stop-work order verbally. Smith said that he did not grant Michael permission to continue building the grain bin on August 14, 2000, or on any date thereafter.

Scott Buening, the former director of the zoning department, testified that within a short period after August 14, 2000, the zoning department received an application for an agriculturally-exempt permit for the construction of a grain bin on the subject property. With the filing of the application for the permit, Buening discovered that the grain bin's location did not meet the zoning ordinance's setback requirements, and he did not issue the permit. Buening advised Michael that he would need to get a variance in order for construction to proceed. Buening handed Michael the papers required to request a variance and explained what Michael needed to do to submit them. Regarding his conversation with Michael, Buening testified:

"I explained to him the variance process and we had had a conversation about, you know, I think we talked about whether there was a possibility of being able to continue the construction prior to the variance and permit being approved."

Buening said that he told Michael that Buening:

"would consider that but we [the zoning department] needed to have the variance application in hand. We needed to have some survey done of the property. We needed to have some information from the road commissioner regarding whether or not they had a problem with the location of the bin. We did not—I did not during that conversation say that he could continue that construction at that time."

Buening said that he had only one conversation with Michael and never spoke to the other defendants about the grain bin.

Buening identified a letter that he sent to Michael's and Tamara's attorney on December 18, 2000, in which Buening clarified what he told Michael about the variance procedure. In pertinent part, Buening wrote:

"Furthermore, when Mr. Rosenwinkel and I discussed the variance procedures, I indicated that we may consider allowing construction to continue *after* a variance application was submitted. I also requested a letter acknowledging this work would be done at his own risk and that he would agree to remove the structure to be in compliance with the zoning ordinance if the variance were to be denied." (Emphasis in original.)

Buening testified further that he received the survey of the subject property in January 2001. Buening also said that the Little Rock Township highway commissioner indicated in a letter that he did not object to the location of the grain bin. Buening added that the two preexisting grain bins on the Jeter Road side of the subject property are actually closer to Jeter Road than the grain bin at issue. Buening said that one of the preexisting grain bins was the subject of a variance and that he did not know the circumstances regarding the other grain bin. After the application for a variance was complete, a hearing was held before the Zoning Board of Appeals, after which the application for a variance was denied.[1] On April 25, 2001, Buening sent a letter to Michael's and Tamara's attorney, with a copy to Michael and Tamara, advising that the grain bin must be removed within 90 days.

On cross-examination, Buening admitted that the survey does not indicate that Jeter Road has been dedicated to the public nor does it indicate the existence of any prescriptive easement in favor of Little Rock Township. Buening also admitted that no stop-work order was posted on the subject property but that the oral stop-work order was referenced in subsequent correspondence. Buening said that the grain bin was completed by December 18, 2000. Buening agreed that no letter regarding the Zoning Board of Appeals' decision was sent to John or Susan.

Kendall County engineer Francis Klass testified that Jeter Road is a township road that is maintained by Little Rock Township. Klass testified that it was his understanding that Jeter Road is a public roadway. Klass did not have any document showing a dedication of Jeter Road to Little Rock Township. Klass also said that the survey

---

[1]There is no indication in the record that defendants sought administrative review of the decision of the Zoning Board of Appeals.

does not show that there is a prescriptive easement in favor of Little Rock Township for Jeter Road.

Little Rock Township Highway Commissioner Thomas Murst testified that Little Rock Township is responsible for maintaining Jeter Road, and the maintenance is paid for with motor fuel tax funds. For the past 22 years Murst, as a Little Rock Township employee, has worked on and maintained Jeter Road, including performing snow removal. Murst acknowledged that he provided Michael with a letter indicating that as long as the new grain bin was farther away from Jeter Road than the existing grain bins, he had no objection to its location.

Jerry Dudgeon testified that he has been the director of the zoning department for the past 4½ months. Dudgeon identified a 1997 request for a variance, signed by Michael, concerning the two preexisting grain bins located on the subject property along Jeter Road. Kendall County granted the 1997 request, allowing the two grain bins to encroach upon the setback.

After Dudgeon's testimony, the County rested. Tamara, John, and Susan made motions for directed findings as to the ordinance violations with which they were charged. The trial court took the motions under advisement, reserved its ruling, and proceeded to hear defendants' case. Ultimately, the trial court denied the motions for directed findings.

Michael testified that he lives in a farmhouse on a different parcel of land on Galena Road and that the farmhouse is less than 150 feet back from the center line of Galena Road. Michael said that when he and his wife, Tamara, put an addition on the house in 1999, they went to the zoning department to see what, if any, permit they needed. According to Michael, he was told that because the parcel was agricultural they did not need a permit or a variance as long as the addition would not be closer to the roadway than the existing building. Michael also said that in 1999 he built a machine shed on the farmstead where he lives. Michael went to the zoning department to inquire if he needed a variance or a building permit for the shed and was told that he did not as long as the shed was no closer to the roadway than the existing structures.

Michael testified that he has no idea when his signature was placed on the 1997 application for a variance for the two other grain bins along Jeter Road. Michael remembered going to a meeting, in his brother John's stead, where the Zoning Board of Appeals granted the variance. Michael said that grain bins are constructed close together so that they can be filled with a common grain-handling system. Michael also said that his mother, who owned the subject property

prior to John and Susan, gave him permission to construct the subject grain bin only where it now stands.

Michael testified further that Smith came to the subject property on August 16, 2000, not on August 14, 2000. According to Michael, on that date, work had not commenced on the subject grain bin. Michael said that he showed Smith where he intended to build the subject grain bin and that Smith said that maybe Michael should see Buening at the zoning department to see if there was anything Michael needed to do. Michael testified that no stop-work order was issued. Michael said that the next day he went to the zoning department and told Buening that there was some urgency to construct the grain bin. According to Michael, Buening told him to obtain a letter from the township highway commissioner, and if the commissioner did not have a problem with the location of the grain bin, neither did Buening. Michael said that they began pouring concrete for the subject grain bin on September 21, 2000. Construction of the actual structure of the grain bin began two days later and was completed in 12 workdays. Michael said that no stop-work order was ever given during the construction. Michael said that he received letters from the zoning department, referencing a stop-work order, only after the completion of construction. Michael testified that the total cost to construct the subject grain bin was approximately $200,000 and that it would cost $140,000 to relocate the grain bin. Michael said that, of the three grain bins that are lined up parallel to Jeter Road, the subject grain bin is farthest from the road. Michael also said that the eastern border of the subject property is the fence line on the east side of Jeter Road.

Robert Davidson of 244 Jeter Road testified that he resides directly east of the subject property. Davidson testified that the fence line on the east side of Jeter Road is the western boundary of his property. Davidson had no objection to the construction of the subject grain bin.

On October 30, 2002, after hearing the arguments of the parties, the trial court took the matter under advisement. On August 7, 2003, the trial court entered two orders. In the chancery case, the trial court found that defendants violated section 7.00(H)(3)(b) of the zoning ordinance, and the court ordered defendants to immediately remove the subject grain bin. The trial court also permanently enjoined and restrained defendants and their agents, lessees, and successors from violating section 7.00(H)(3)(b). In the ordinance violation cases, the trial court found that defendants violated the ordinance, entered a finding of guilty as to all four defendants, and continued the matter for argument on the amount of the fine that should be imposed. On August 14, 2003, defendants filed a notice of appeal from the August 7, 2003, order pertaining to the chancery case, and the appeal was

docketed in this court as case No. 2—03—1028. On October 30, 2003, the trial court entered an order in the ordinance violation cases assessing a $500-per-week fine against defendants, commencing on the filing date of the complaints and continuing to accrue until the grain bin is removed from the subject property. A notice of appeal from the trial court's October 30, 2003, order was filed the same day, and the appeal was docketed in this court as case No. 2—03—1216. The appeals have been consolidated in this court.

## II. ANALYSIS

### A. Mandatory Injunction

■ In order to be entitled to a permanent injunction, a plaintiff must establish that he or she has no adequate remedy at law, that he or she possesses a certain and clearly ascertainable right, and that he or she will suffer irreparable harm if no relief is granted. *Lucas v. Peters*, 318 Ill. App. 3d 1, 15-16 (2000). In addition, a court considering injunctive relief should balance the equities. *Village of Wilsonville v. SCA Services, Inc.*, 86 Ill. 2d 1, 27 (1981); *Peters*, 318 Ill. App. 3d at 16-17.

Defendants contend that the trial court abused its discretion in entering the injunction requiring the removal of the grain bin because the County failed to prove an ascertainable right, an irreparable injury, and the inadequacy of a remedy at law. The County maintains that it proved these necessary elements and, therefore, the trial court properly issued the injunction.

■ Section 5—12017 provides in pertinent part:

"§ 5—12017. Violations. In case any building or structure is erected, constructed, reconstructed, altered, repaired, converted or maintained or any building, structure or land is used in violation of this Division or of any ordinance, resolution or other regulation made under authority conferred thereby, the proper authorities of the County ***, in addition to other remedies, may institute any appropriate action or proceedings in the circuit court to prevent such unlawful erection, construction, reconstruction, alteration, repair, conversion, maintenance or use, to restrain, correct, or abate such violation, to prevent the occupancy of said building, structure or land or to prevent any illegal act, conduct, business, or use in or about such premises." 55 ILCS 5/5—12017 (West 2002).

Division 5—13 of the Counties Code addresses counties' authority to establish building or setback lines. Section 5—13004 of that division provides:

"Proceedings to restrain violation. In case any building or structure is erected or constructed in violation of this Division, or

any resolution or other regulation made under the authority conferred thereby, the proper authorities of the county, in addition to other remedies, may institute any appropriate action or proceedings to prevent such unlawful erection or construction to restrain, correct or abate such violation, to prevent the occupancy of said building or structure or to prevent any illegal act, conduct, business or use in or about such premises." 55 ILCS 5/5—13004 (West 2002).

■ Notwithstanding the parties' failure to recognize and cite authority for the proposition, it is well established that where, as here, the government is expressly authorized by statute to seek injunctive relief, the three traditional equitable elements necessary to obtain an injunction, as listed above, need not be satisfied. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 277 (2003); *Sadat v. American Motors Corp.*, 104 Ill. 2d 105, 111-13 (1984); *Village of Riverdale v. Allied Waste Transportation, Inc.*, 334 Ill. App. 3d 224, 228-29 (2002); *City of Chicago v. Krisjon Construction Co.*, 246 Ill. App. 3d 950, 959 (1993); *Midland Enterprises, Inc. v. City of Elmhurst*, 226 Ill. App. 3d 494, 504 (1993). This rule is based upon the presumption that public harm occurs when a statute is violated. *Midland Enterprises*, 226 Ill. App. 3d at 504. In such a case, the State or governmental agency need show only that a statute was violated and that the statute relied upon specifically allows injunctive relief. *Midland Enterprises*, 226 Ill. App. 3d at 504.

■ Because sections 5—12017 and 5—13004 specifically provide for injunctive relief for zoning violations, the County was required to prove only that section 7.00(H)(3)(b) was indeed violated. Therefore, defendants' arguments that the County failed to establish a clearly ascertainable right, irreparable harm, and the inadequacy of a remedy at law are misplaced. For the reasons stated in section B below, we reject defendants' arguments that the State failed to prove a violation of section 7.00(H)(3)(b).

■ Defendants also argue that the trial court erred in issuing the injunction, because, when balanced, the equities weigh heavily in favor of defendants. Generally, a court considering injunctive relief should balance the equities. *Village of Wilsonville*, 86 Ill. 2d at 28; *Lucas*, 318 Ill. App. 3d at 16-17. This is so even where the three traditional elements necessary to secure a permanent injunction are supplanted by a statute expressly authorizing the State or governmental agency to seek injunctive relief. See *Midland Enterprises*, 226 Ill. App. 3d at 505 (balancing equities after determining that the traditional elements of equitable relief did not need to be shown). However, where an encroachment is deliberate, the court may issue a

mandatory injunction without considering the relative hardships. *Ariola v. Nigro*, 16 Ill. 2d 46, 51-52 (1959); *Whitlock v. Hilander Foods, Inc.*, 308 Ill. App. 3d 456, 463 (1999). Thus, a court need not balance the equities before enjoining a zoning ordinance violation if the violation is intentional (*Reiter v. Neilis*, 125 Ill. App. 3d 774, 779 (1984)), but such balancing is permissible.

The record in this case does not include any written or oral recitation of the trial court's reasoning supporting its decision to grant the mandatory injunction, and, therefore, we do not know if the trial court found an intentional violation of the zoning ordinance, whether it balanced the equities, and if so, how it weighed those equities. Our review of the facts indicates that the trial court could have reasonably concluded that Michael's and Tamara's actions constituted an intentional violation of the ordinance. However, the same cannot be said of John's and Sue's actions because, for the reasons explained in section B below, the County failed to prove that they violated the zoning ordinance at all. Thus, an injunction should not have issued against John and Susan, and we reverse that portion of the trial court's August 7, 2003, order issuing a mandatory injunction against John and Susan.

Among the facts pertinent to deciding whether Michael and Tamara intentionally violated the ordinance are as follows. There was conflicting testimony as to the date that the County's code compliance officers visited the subject property in August 2000, whether construction of the grain bin had then begun, and whether an oral stop-work order was given to Michael at that time. There was, however, no dispute that Michael and Buening had a conversation sometime shortly after August 14, 2000, during which Buening told Michael that he needed a variance to construct the grain bin inside the 150-foot setback. It is also undisputed that Michael, through Tamara, applied for a variance for the grain bin on August 21, 2000. What is disputed is whether, during their conversation, Buening gave Michael permission to proceed with construction of the grain bin at his own risk while the application for a variance was pending. On this point, Buening testified that he told Michael that he would consider allowing construction of the grain bin to continue, but that he needed a complete application for a variance first. Buening denied ever giving Michael permission to proceed with construction of the grain bin. In contrast, Michael testified that Buening told him to obtain a letter from the township highway commissioner, and if the commissioner did not have a problem with the location of the grain bin, neither did Buening. Because the trial court made no findings of fact, we do not know whether the trial court believed Buening or Michael on the issue of whether Michael was given permission to proceed with construction

of the grain bin at his own risk. However, even if the trial court believed Michael's version of the events, the trial court could have found that the evidence presented at trial established an intentional violation of the ordinance by Michael and Tamara, such that balancing the equities would not be necessary.

In any event, there is no indication in the record that the trial court balanced the equities before issuing the injunction. The trial court's ruling with respect to the elements of a permanent injunction, including the balance of the equities, may not be reversed absent an abuse of discretion. *DMS Pharmaceutical Group v. County of Cook*, 345 Ill. App. 3d 430, 445 (2003). Here, we are unable to determine whether the trial court balanced the equities, and, if so, whether, as defendants argue, it abused its discretion in doing so. Accordingly, we reverse the trial court's issuance of the mandatory injunction requiring removal of the grain bin, and we remand Kendall County case No. 02—CH—77 for further proceedings. On remand, the trial court is directed to make express findings as to whether the County proved an intentional violation of the ordinance by Michael and Susan. If the trial court finds no intentional violation of the ordinance, it must proceed to balance the equities, including the cost of removing the grain bin and the impact that removal of the grain bin would have on the value of the subject property against the harm that the public would suffer if the grain bin remains in its present location. The interest of and harm to nonparties such as John and Susan, as owners of the subject property, are among the equities to be balanced. See *Reid L. v. Illinois State Board of Education*, 289 F.3d 1009, 1021 (7th Cir. 2002) (court must consider the interest of and harm to nonparties in a denial or granting of the injunction). On the other hand, if the trial court finds an intentional violation of the ordinance, the trial court is permitted to issue the injunction without balancing the equities or, if the trial court sees fit, it may proceed to balance the equities, as outlined above, despite the intentional violation. See *Whitlock*, 308 Ill. App. 3d at 463.

Defendants also argue that their justifiable reliance on affirmative acts by the zoning department equitably estopped the County from enforcing the zoning ordinance against them and, therefore, the trial court abused its discretion in issuing the mandatory injunction. We disagree.

The affirmative acts of the zoning department to which defendants refer are twofold. First are the purported statements in 1999 by employees of the zoning department informing Michael and Tamara that they did not need a variance to erect structures, specifically a home addition and a machine shed, inside the 150-foot setback on

their own Galena Road property, so long as the new construction was no closer to the roadway than any existing structure. Second is the zoning department's purported failure to issue a stop-work order. However, even if we assume that the trial court believed Michael's testimony regarding the statements made in 1999 by zoning department employees and believed that the code compliance officers did not issue a stop-work order, defendants' equitable estoppel defense fails.

■ The six elements of equitable estoppel are (1) a misrepresentation or concealment of material facts; (2) the party against whom estoppel is alleged must have had actual or implied knowledge at the time the representations were made that the representations were untrue (or that the misrepresentations were made with gross negligence as to their truth); (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other person intended or reasonably expected that the party claiming estoppel or the public generally would act upon the representations; (5) the party claiming estoppel reasonably and in good faith relied upon the representations to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof. *Vaughn v. Speaker*, 126 Ill. 2d 150, 162-63 (1988). These elements must be established by clear and convincing evidence, and the determination of whether to apply equitable estoppel is reviewed for abuse of discretion. *Cosgrove Distributors, Inc. v. Haff*, 343 Ill. App. 3d 426, 430 (2003).

■ It is undisputed that on the date in August 2000 that Michael met with Buening, he was told that he needed a variance to construct the grain bin in the planned location. Thereafter, Michael and Tamara demonstrated their understanding of this fact by applying for a variance on August 21, 2000. Irrespective of their beliefs as to the need for a variance prior to August 2000, Michael and Tamara knew they needed a variance before September 21, 2000, the day that construction of the grain bin commenced, according to Michael. As such, Michael and Tamara did not reasonably rely on the representations made by the zoning department regarding the home addition and the machine shed when they went forward with construction of the grain bin. We note further that, at the time they commenced construction of the grain bin, Michael and Tamara could not have reasonably relied on the County's failure to issue a stop-work order during or after construction of the grain bin. Accordingly, we find no abuse of discretion in the trial court's rejection of defendants' equitable estoppel defense.

■ Defendants argue further that the County was barred by the

doctrine of *laches* from enforcing the zoning ordinance, because it possessed constructive knowledge of the structure's existence and failed to file an action for 19 months after the completion of the grain bin, during which time the structure had been integrated into defendants' daily farming operations. The equitable doctrine of *laches* bars a plaintiff relief where, because of the plaintiff's delay in asserting a right, the defendant has been misled or prejudiced. *City of Rochelle v. Suski*, 206 Ill. App. 3d 497, 501 (1990). Application of the doctrine of *laches* lies within the sound discretion of the trial court, and this court will not disturb its decision absent an abuse of discretion. *In re Marriage of Smith*, 347 Ill. App. 3d 395, 401 (2004). The doctrine of *laches* is not applied to the government except in extraordinary circumstances. *Midland Enterprises*, 226 Ill. App. 3d at 506 (addressing *laches* in the context of a berm that existed at least 9 years and possibly as long as 20 years before an action to remove it was filed). Defendants point to nothing in the record that convinces us that these circumstances are extraordinary. Thus, we find no abuse of discretion in the trial court's determination that the defense of *laches* was inapplicable.

## B. Ordinance Violations

■ Defendants argue that the County failed to prove that they violated section 7.00(H)(3)(b), which establishes, in pertinent part, the required setback for accessory structures at "[o]ne hundred and fifty (150) feet from the center line of all adjacent roads." Kendall County Zoning Ordinance § 7.00(H)(3)(b) (eff. ___). Defendants do not argue that Jeter Road is not a road. Rather, defendants argue that because the evidence established that the subject property's eastern border is the fence line east of Jeter Road, and that the survey does not show a dedication or the grant of a prescriptive easement to Little Rock Township, Jeter Road is in fact a part of the subject property. Defendants suggest, without a citation, that "Webster's Dictionary" defines the word "adjacent" as "Close to; next to; lying near; adjoining." Defendants conclude that Jeter Road cannot be adjacent to the subject property because it is part of the subject property and, therefore, the trial court erred in finding that they violated the ordinance.

Resolution of this argument requires us to analyze the construction and application of section 7.00(H)(3)(b). These matters are questions of law to which we apply a *de novo* standard of review. *Constantine v. Village of Glenn Ellyn*, 217 Ill. App. 3d 4, 16 (1991).

Among the definitions of the word "adjacent" is "[l]ying near or close to, but not necessarily touching." Black's Law Dictionary 44 (8th ed. 2003). Defendants' argument is flawed because section 7.00(H)(3)(b) does not impose the 150-foot setback when a road is

adjacent to the property on which the accessory structure is located but, rather, the accessory structure must be set back 150 feet from the center lines of all adjacent roads. In other words, it is the accessory structure's location adjacent to a road that triggers the setback, not the subject property's location adjacent to the road.

Moreover, the Kendall County zoning ordinance acknowledges that a public roadway may be located upon private property. The ordinance defines "Right-of-Way Line" as "[t]he edge of the public roadway right-of-way as dedicated or shown as a prescriptive easement on a certified plat of survey" and "[t]he edge of a private roadway right-of-way as dedicated as a common easement or commonly owned parcel." Kendall County Zoning Ordinance § 3.02 (eff. ___). Roadway easements in favor of the public may exist over private property. For example, a public highway may be established through a prescriptive easement pursuant to section 2—202 of the Illinois Highway Code (605 ILCS 5/2—202 (West 2002)) where the public use of a private road has been adverse, under a claim of right, open and notorious, continuous and uninterrupted, with the knowledge of the owner but without his consent, for 15 years. *Limestone Development Corp. v. Village of Lemont*, 284 Ill. App. 3d 848, 854 (1996). Thus, defendants' suggestion that "adjacent to" in section 7.00(H)(3)(b) means next to the parcel of property upon which the accessory structure is located is illogical because, in the case of an easement, the public roadway would never be *next to* the property upon which it is located.

•■ Defendants also argue that the trial court erred in denying John's and Susan's motions for directed findings on the ordinance violations, because no evidence was presented that they, as owners of the subject property, knew about the zoning violation brought about by the construction of the grain bin or aided or abetted the construction of the grain bin.[2] Defendants cite *People v. Midway Landfill, Inc.*, 23 Ill. App. 3d 1080 (1974), in support of their position. In *Midway Landfill*, the defendant was a landfill operator who leased a landfill site from the plaintiff county. The defendant was charged with violations of the Kane County landfill control ordinance, which subjected the defendant to fines and imprisonment. *Midway Landfill*, 23 Ill. App. 3d at 1080-81. The defendant contended that it operated the landfill site as the county's agent, and, therefore, the only powers the

---

[2]Apparently, defendants make the same argument as to Tamara's motion for a directed finding. This portion of their argument clearly lacks merit, as it was stipulated that Tamara was a tenant on the subject property, not an owner.

county had were to discharge the defendant as its agent or to close down the operation. *Midway Landfill*, 23 Ill. App. 3d at 1082-83. This court concluded that the relationship of landlord-tenant does not render the landlord criminally liable for the illegal use of the premises by the tenant if the landlord does not aid or abet the tenant in his illegal use. *Midway Landfill*, 23 Ill. App. 3d at 1083.

*Midway Landfill* is not a zoning case and does not address the issue raised by defendants, that is, whether an owner of property can be held absolutely liable for violating a zoning ordinance even though the violation was the result of the acts of his or her tenant. Neither party directs us to Illinois authority directly on point, and we have found none. Regrettably, neither party directs us to any foreign authority addressing the issue. Nevertheless, our research reveals that the decisions from the few jurisdictions that have considered the issue are basically consistent with our holding in *Midway Landfill*.

The cases addressing this issue have adopted the standard that the owner can be held criminally liable for zoning violations created by the tenant only if the owner has knowledge of the violation and has the power to obtain the tenant's compliance or to evict the tenant after receiving knowledge of the violation. See *Town of Boothbay v. Jenness*, 822 A.2d 1169, 1173-74 (Me. 2003); *Commonwealth v. DeLoach*, 714 A.2d 483, 486-87 (Pa. Commw. 1998); *City of Webster Groves v. Erickson*, 789 S.W.2d 824, 826-27 (Mo. App. 1990); *People v. Scott*, 26 N.Y.2d 286, 289-90, 258 N.E.2d 206, 209, 309 N.Y.S.2d 919, 923-24 (1970). Our holding in *Midway Landfill* is consistent with these decisions because to aid and abet is "[t]o assist or facilitate the commission of a crime, or to promote its accomplishment." Black's Law Dictionary 76 (8th ed. 2004); see also 720 ILCS 5/5—2(c) (West 2002) ("A person is legally accountable for the conduct of another when: *** (c) [e]ither before or during the commission of an offense, with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense"). Where an owner has knowledge of a zoning violation on his or her property as a result of a tenant's acts, and the owner has the power to stop the violation but does nothing, he or she is promoting or facilitating the violation.

Because the evidence does not establish that John and Susan had any connection with the subject property prior to becoming owners on January 5, 2002, they can be guilty of violating the zoning ordinance only by allowing the grain bin to remain on the property after January 5, 2002. Adopting the "knowledge and power to obtain compliance standard" and applying it to the facts of this case, the County was required, first, to show that John and Susan, as owners of the subject

property, had knowledge that, without the authority of a variance, the grain bin's location on the subject property violated the setback requirement. We find that Kendall County has not done so. The first indication in the record that John and Susan had any knowledge of the zoning violation is a return of summons, showing that they were served on June 3, 2002, with summons and complaint alleging that they committed the violation. Notice in this form does not suffice to show knowledge of an ordinance violation that they were alleged to have committed as of May 31, 2002, the day the complaints alleging that they violated the ordinance were filed. If a stop-work order regarding the construction of the subject grain bin was indeed issued in this case, a point that was contested, it was issued orally to Michael only, before John and Susan became owners of the subject property. All three employees of the zoning department who testified at trial indicated that they never had any communication with John and Susan concerning the subject grain bin. We acknowledge that, because of the family relationship and the fact that Michael and John farmed as partners at one time, there is a strong possibility that John and Susan were aware that the grain bin was in violation of the zoning ordinance at the time it was constructed. And if not, there is a strong possibility that John and Susan became aware of the violation before they acquired the subject property on January 5, 2002. Nevertheless, a county is required to prove a violation of its zoning ordinance by a clear preponderance of the evidence. *County of Kankakee v. Anthony*, 304 Ill. App. 3d 1040, 1048 (1999). These possibilities do not satisfy the County's burden to show that John and Susan had knowledge of the specific zoning violation with which they were charged. Even if John and Susan were aware of the 150-foot setback requirement, and knew that the subject grain bin was inside that setback in violation of the zoning ordinance, there was no proof presented that they were aware that a variance allowing the grain bin to be located inside the setback had not been granted. Buening testified that a notice of the Zoning Board of Appeals' decision denying the application for a variance for the subject grain bin was not sent to John and Susan. Because the County failed to prove that John and Susan had knowledge of the zoning violation by their tenants, we conclude that the trial court erred in denying John's and Susan's motions for directed findings.

Although lack of any proof that John and Susan had knowledge of the zoning violation is dispositive and requires reversal of their convictions of the violation, we note further that the evidence presented by the County was insufficient to prove that John and Susan had the power to bring their property into compliance with the zoning ordinance. The record indicates that John and Susan did not become

owners of the subject property until January 5, 2002, and, as such, certainly did not have the power to stop the violation at its inception in the fall of 2000, to evict Michael and Tamara, or to remediate the violation in any fashion prior to the date they became owners. Although the parties stipulated that Michael and Tamara were tenants on the subject property and John and Susan were owners, the County did not prove the nature of the lease, including whether John and Susan had a reasonable ability to control the use of the subject property under the terms of the lease. For instance, there was no proof adduced at trial that they reserved a right of entry to the subject property during the term of the lease, that the lease provided that they could compel Michael's and Tamara's compliance with the zoning ordinance, or that they could evict them after receiving notification of a zoning violation. Accordingly, we reverse the judgments of conviction entered in case Nos. 02—OV—38 and 02—OV—39, and vacate that portion of the October 30, 2003, order imposing fines on John and Susan.

### C. Propriety of the Fines Imposed and the Constitutional Challenge to Section 5—12017

 Section 5—12017 of the Counties Code provides in part that "[a]ny person who violates the terms of any ordinance adopted under the authority of this Division [pertaining to zoning] shall be guilty of a petty offense punishable by a fine not to exceed $500, with each week the violation remains uncorrected constituting a separate offense." 55 ILCS 5/5—12017 (West 2002). Section 13.08 of the Kendall County zoning ordinance is titled "Penalties" and in almost identical verbiage provides that "[a]ny person, firm or corporation who violates any of the provisions of this ordinance shall be guilty of a petty offense punishable by a fine not to exceed $500 with each week the violation remains uncorrected constituting a separate offense." Kendall County Zoning Ordinance § 13.08 (eff. ___). Defendants make two arguments concerning the impropriety of the trial court's October 30, 2003, order imposing fines for the ordinance violations. The order provides, in pertinent part:

"The Court finding that a continuing violation of Section 7.00(H)(3)(b) of the Kendall County Zoning Ordinance by the Defendants, [i]t is hereby ordered as follows:

1. That a $500.00 per week fine shall be assessed against the Defendants, and not each Defendant individually, commencing at the date of filing of the Complaint.

2. That said fine shall continue to accrue until such time as the grain bin is removed from the Subject Property.

3. The Court having found that said violation constitutes a

continuous series of acts, the Defendants are jointly and sever-ally liable for above referenced fine."

Defendants first argue that a maximum fine of $500 should be as-sessed against each of them, asserting that a fine greater than $500 would violate their right to trial by jury because they did not waive and were not admonished of that right. This argument lacks merit. The law is clear that without a demand for a trial by jury and the pay-ment of the appropriate fee, there is no such right with an ordinance violation punishable by fine only. 725 ILCS 5/103—6 (West 2002) ("Every person accused of an offense shall have the right to a trial by jury unless (i) understandingly waived by defendant in open court or (ii) the offense is an ordinance violation punishable by fine only and the defendant either fails to file a demand for a trial by jury at the time of entering his or her plea of not guilty or fails to pay to the clerk of the circuit court at the time of entering his or her plea of not guilty any jury fee required to be paid to the clerk"). The zoning ordinance violations charged in this case are punishable by fine only, and defendants do not contend that they demanded a trial by jury or that they paid the clerk the required fee.

Defendants' second contention is that "the imposition of any fine imposed pursuant to section 12—12017 prior to a full hearing on the matter effectually deprives an individual of their rights to due process and penalizes an individual for exercising constitutional rights." We reject defendants' argument. Simply stated, contrary to defendants' assertion, sections 12—12017 and 13.08 do not authorize the imposi-tion of fines prior to a full hearing on the alleged ordinance violation. That being said, however, the fines imposed by the trial court were partially invalid.

The continuing fine pending defendants' compliance with the zon-ing ordinance is not authorized by section 12—12017 or by section 13.08. Defendants were charged with the commission of ordinance violations beginning "on August 14, 2000, and at all times since." Defendants do not contend that they were not on notice that they were being charged with an ongoing offense. In addition, sections 5—12017 and 13.08 make it clear that each week that an ordinance violation remains uncorrected constitutes a separate offense. Accord-ingly, it was proper to impose a fine for each week the County proved that the zoning ordinance violation occurred, including the violations for the weeks up to October 30, 2002, the date that trial proofs were closed. However, the imposition of a $500-per-week fine for time after October 30, 2002, is inappropriate because a violation of the zoning ordinance since the trial has not been proven. The language "with each week the violation remains uncorrected constituting a separate

offense" does not authorize the trial court to impose an ongoing fine pending defendants' compliance with the zoning ordinance. The language authorizes the County to bring an ordinance violation charge for each week the ordinance violation occurs; it does not relieve the County of its burden to prove each weekly zoning ordinance violation by a clear preponderance of the evidence. Proceedings to enforce a county zoning ordinance are quasi-criminal. *County of Kankakee*, 304 Ill. App. 3d at 1048. Section 5—12017 is penal, providing, in addition to traditional equitable relief, that a violation of a zoning ordinance is a petty offense punishable by a fine not to exceed $500. *Reiter v. Neilis*, 125 Ill. App. 3d 774, 780 (1984) (construing Ill. Rev. Stat. 1981, ch. 34, par. 3160 (repealed; now 55 ILCS 5/5—12017 (West 2000)). In *Kansas v. Scherer*, 11 Kan. App. 2d 362, 368-69, 721 P.2d 743, 748-49 (1986), a continuing fine pending the defendant's compliance with the zoning ordinance he was convicted of violating was held improper. The ordinance at issue in *Scherer* provided in part:

"That any violation of any provision of this act shall be deemed to be a misdemeanor and punishable by a fine not to exceed two hundred dollars for each offense and that each day's violation shall constitute a separate offense..." *Scherer*, 11 Kan. App. 2d at 368, 721 P.2d at 748, quoting Kan. Stat. Ann. § 19—2912 (___).

In *Scherer*, the Court of Appeals of Kansas wrote:

"As to that portion of the sentence which imposed a fine for each day between the trial and the sentencing and 'for each day the violation continues' we conclude 'one can be punished only for an offense which he has actually committed, not for an offense which he may commit in the future.' 21 Am. Jur. 2d, Criminal Law § 4, p. 117. This rule follows from the long-standing rule of criminal procedure which has been codified at K.S.A. 21—3109: 'A defendant is presumed to be innocent until the contrary is proved.' Obviously, no evidence of Scherer's violation of the regulation after the date of his trial has been properly offered in a criminal trial against him. Therefore, he cannot be punished for violations alleged to have occurred after the trial until he is convicted of those violations." *Scherer*, 11 Kan. App. 2d at 369, 721 P.2d at 749.

Moreover, it is a fundamental principle of our system of jurisprudence that no person shall be deprived of property without due process of law. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. The trial court's October 30, 2003, order does just that inasmuch as it imposes a fine that continuously accrues until such time as the grain bin is removed from the subject property. The trial court's October 30, 2003, order penalizes defendants for ordinance violations that have not occurred and have not been pleaded or proven by the County, without affording defendants a trial. The trial court's order places a weekly

burden on defendants to demonstrate that they have not committed a zoning ordinance violation, and if they do not meet their burden, another $500 fine is automatically imposed. The trial court has no authority to impose a punishment other than what the statute mandates. *City of Chicago v. Roman*, 184 Ill. 2d 504, 510 (1998).

Rather than exercising our authority under Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)) to vacate the unauthorized fines imposed by the trial court, we elect to vacate the trial court's entire October 30, 2003, order and remand the cause for resentencing. The maximum fine authorized by law is $500 per offense proved. At sentencing, the trial court determined that, for all four defendants, a total joint and several fine of $500 per weekly offense was appropriate.[3] We cannot assume that the trial court would fine the two defendants whose convictions we have affirmed a total of $500 for each weekly offense proven.

## III. CONCLUSION

For the foregoing reasons, in case No. 02—03—1028, we reverse the judgment of the circuit court of Kendall County in Kendall County case No. 02—CH—77 issuing a mandatory injunction, and we remand the cause for further proceedings. In case No. 2—03—1216, we reverse the judgments of conviction entered against John and Susan Rosenwinkel in Kendall County case Nos. 02—OV—38 and 02—OV—39, we affirm the judgments of conviction entered against Michael and Tamara Rosenwinkel in Kendall County case Nos. 02—OV—19 and 02—OV—20, but we remand those causes for resentencing.

No. 2—03—1028, Reversed and remanded with directions.

No. 2—03—1216, Affirmed in part and reversed in part; cause remanded with directions.

BOWMAN and BYRNE, JJ., concur.

---

[3]We note that neither section 12—12017 nor section 13.08 authorizes a fine that is joint and several. The viability of a joint fine was resolved by our supreme court almost 150 years ago in *Moody v. People*, 20 Ill. 316, 320 (1858) ("where several persons are jointly indicted and convicted, they should be sentenced severally, and the imposition of a joint fine, is erroneous").