**2024 IL 129164**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 129164)

THE CITY OF ROCK FALLS, Appellee, v. AIMS INDUSTRIAL SERVICES, LLC, Appellant.

*Opinion filed January 19, 2024.*

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Holder White, Rochford, and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1    Petitioner, the City of Rock Falls (City), filed a verified petition for injunctive and other relief against respondent, Aims Industrial Services, LLC (Aims), in the circuit court of Whiteside County. The petition sought to compel Aims's compliance with a City ordinance requiring that, upon the sale or transfer of any property located within the City limits that is served by a private sewage disposal system, the private system be abandoned and replaced with a connection to the

City's public sewage disposal system. Following a bench trial, the trial court determined that it would be inequitable to award the City an injunction and, on that basis, denied the City's petition. The appellate court reversed the trial court, holding that, because the City sought the enforcement of an ordinance that specifically authorized injunctive relief, the trial court erred in weighing the equities when deciding whether to grant the City's petition. 2022 IL App (4th) 220208-U. For the reasons that follow, we affirm the judgment of the appellate court.

¶ 2                                   BACKGROUND

¶ 3        On March 3, 2017, Aims purchased a commercial property located within the City at 2103 Industrial Park Road. The property was serviced by a private sewage disposal system rather than the City's public sewage disposal system.

¶ 4        At the time Aims purchased the property, it was governed by section 32-189(g) of the Rock Falls Municipal Code (Code). This provision states:

"Upon sale or transfer of property all private sewage disposal systems within the city limits shall connect to the public sanitary sewer when available in accordance with sections 32-186 and 32-190, a direct connection shall be made to the public sewer, and the private sewage disposal system shall be abandoned and shall be cleaned of sludge and filled with granular materials. The county health department shall be notified and inspect the abandoned septic system prior to any remedial actions being taken." Rock Falls Municipal Code, § 32-189(g) (eff. Aug. 21, 2018).

¶ 5        Under section 32-189(g), whether a public sanitary sewer is "available" for connection is determined by reference to sections 32-186 and 32-190 of the Code. See Rock Falls Municipal Code, § 32-186 (adopted July 7, 2015); Rock Falls Municipal Code, § 32-190 (eff. Sept. 15, 2015). These provisions state:

"No person having his residence or place of business within the territorial limits of the city shall be permitted to dispose of sewage of such residence or place of business located in the city otherwise than through the sewer mains of the city whenever the sewer mains of the sewerage system of the city are

- 2 -

adjacent to his property, without the written permission of the council." Rock Falls Municipal Code, § 32-186 (adopted July 7, 2015).

"The owner of each house, building or property used for human occupancy, employment, recreation or any other purpose, situated within the city is required, at his expense, to install suitable toilet facilities therein, meeting the requirements of the state *** plumbing code, and to connect such facilities directly with the public wastewater treatment system in accordance with the provisions of this division, and within 60 days after official notice to so connect. This provision shall be effective provided that there [is] a wastewater treatment system main located: (i) within 300 feet of the property line of a property utilized for residential purposes; (ii) within 300 feet of the property line of a property utilized for nonresidential purposes which has a daily sewage flow of less than 1,500 gallons per day; or, (iii) within 1,000 feet of the property line of a property utilized for nonresidential purposes which has a daily sewage flow of 1,500 gallons per day or greater." Rock Falls Municipal Code, § 32-190 (eff. Sept. 15, 2015).

¶ 6       In addition, section 1-41(n) of the Code authorizes the City to seek injunctive relief for continuous violations of the Code:

"Violations of this Code that are continuous with respect to time are a public nuisance and may be abated by injunctive or other equitable relief. The imposition of a penalty does not prevent injunctive relief." Rock Falls Municipal Code, § 1-41(n) (eff. July 5, 2017).

¶ 7       Following its purchase of the property, Aims was notified by the City that it was required to connect to the City's public sewage disposal system pursuant to section 32-189(g) of the Code. However, Aims did not do so.

¶ 8       Thereafter, on August 5, 2019, the City filed a verified petition for injunctive and other relief to compel Aims's compliance with the sewage disposal provisions of the Code. The petition sought the imposition of a fine as well as a mandatory injunction requiring Aims to abandon its private sewage disposal system and connect to the public sewage disposal system by a date certain to be determined by the court.

¶ 9        The case proceeded to a bench trial. Nathan Simonton, an estimator from a civil engineering firm, testified regarding the construction work that would be required to connect the property to the public sewage disposal system as well as the estimated cost for such work. He stated that it would cost approximately $150,000 to connect the property to the public sewer using a gravity system of waste disposal. This included the cost of installing lateral connectors—sewage lines that run from a property to the main sewer line. He also stated that an alternative method of connection involving the use of an electric pump would cost approximately $51,000.

¶ 10       Robin Blackert, the City's administrator, testified that in 2020 the City approved an ordinance pursuant to section 32-186 of the Code that excused another business located within the City from the requirement of connecting to the public sewage system. According to Blackert, the City passed the ordinance because connecting to the public sewage disposal system would have been cost prohibitive and an undue hardship on the business. Aims had sought a similar exclusion from the City prior to trial but was denied.

¶ 11       At the conclusion of trial, the trial court noted that, while the City had requested the imposition of a fine in its petition, that request had effectively been abandoned during the proceedings and the only question before the court was whether injunctive relief was appropriate. On that issue, the trial court found that section 32-189(g) of the Code had been triggered by Aims's purchase of the property in 2017 and that Aims had not connected to the City's public sewage disposal system. The court further found that the City had met its burden of establishing that a public sewer with a daily sewage flow of less than 1500 gallons per day was located within 300 feet of the property, as required for the sewer to be considered "available" for connection within the meaning of section 32-189(g), and that Aims had not been granted the City council's written permission to continue the use of its private sewage disposal. Nevertheless, the court denied the City's petition.

¶ 12       Emphasizing that it was "sitting as a court in equity," the trial court determined that it was required to balance the equities between the parties when ruling on the City's request for injunctive relief. The court noted that no evidence had been produced to show that Aims's private sewage system was failing or that it presented a threat to public health. The court also noted that connecting to the public sewage

disposal system would be expensive, imposing a hardship on Aims, and that the City had granted an exception to another commercial property owner in the past. In addition, although the trial court found it "reasonable" for the City to require property owners to connect to the public sewage system, the court stated it had "a hard time understanding" why the sale or transfer of a property triggered that requirement. The court concluded: "Having done what can be called the balancing in equity, because that's really what we're talking about, the fairness to everybody, the City's request for injunctive relief is denied."

¶ 13       The City appealed, arguing that the trial court had no authority to balance the equities when deciding whether to grant the City's request for injunctive relief. The appellate court agreed and reversed the judgment of the trial court. 2022 IL App (4th) 220208-U.

¶ 14       Before addressing the availability of injunctive relief, the appellate court noted that language in the trial court's order indicated that it had both incorporated a comparative cost analysis and had considered the absence of lateral connectors when determining whether a connection to the public sewage disposal system was "available" within the meaning of the Code. *Id.* ¶¶ 21-32. The appellate court concluded that this was error and that the availability of a connection was defined solely under the terms of sections 32-186 and 32-190 of the Code. *Id.* ¶ 32. The appellate court further held that the requirements of both these provisions had been established by the City. *Id.* ¶¶ 23-24.

¶ 15       The appellate court then addressed "whether it was appropriate for the trial court to balance the hardships when deciding whether to grant the City's request for injunctive relief." *Id.* ¶ 42. The appellate court acknowledged that, when a suit is brought in equity seeking injunctive relief, the general rule is that the trial court must balance the equities between the parties. *Id.* ¶ 44. The court stated, however, that "where a governmental agency is expressly authorized by statute to seek injunctive relief, the traditional equitable elements necessary to obtain an injunction need not be satisfied." *Id.* ¶ 45. Relying upon *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264 (2003), and *Sadat v. American Motors Corp.*, 104 Ill. 2d 105 (1984), the appellate court explained that, because there is a presumption of harm to the public when an ordinance is violated, a governmental agency seeking an injunction need only show that the ordinance was violated and that the ordinance specifically

- 5 -

provides for injunctive relief. 2022 IL App (4th) 220208-U, ¶ 45. The court concluded, therefore, in this case, that the City had to prove only that Aims violated the Code and that the Code specifically authorized injunctive relief as a remedy. *Id.* ¶ 50. As such, the construction work and cost required to connect to the City's sewage system, as well as the exemption granted to the other business, were irrelevant. *Id.* In reaching this result, the appellate court declined to follow *County of Kendall v. Rosenwinkel*, 353 Ill. App. 3d 529, 539 (2004), wherein the court held that a trial court may balance the equities even when a statute expressly authorizes a governmental agency to seek injunctive relief. 2022 IL App (4th) 220208-U, ¶ 49.

¶ 16 We allowed Aims's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021).

¶ 17 ANALYSIS

¶ 18 Before this court, Aims does not challenge the appellate court's holding that a connection to the City's public sewage disposal system was available within the meaning of the Code. Instead, Aims contends only that the appellate court erred in holding that the trial court lacked the authority to weigh the equities when ruling on the City's request for injunctive relief. The City, in response, contends that the appellate court correctly determined that the trial court lacked any such authority.

¶ 19 The City does not dispute that, when a suit is filed in equity seeking mandatory injunctive relief, the moving party must establish that it has no adequate remedy at law, that it possesses a certain and clearly ascertainable right, and that it will suffer irreparable harm if no relief is granted. See, *e.g.*, *Sadat*, 104 Ill. 2d at 116. In addition, the trial court is generally required to balance the equities before awarding the injunction. See, *e.g.*, *Village of Wilsonville v. SCA Services, Inc.*, 86 Ill. 2d 1, 28-29 (1981) (citing *Haack v. Lindsay Light & Chemical Co.*, 393 Ill. 367, 375 (1946)). The City points out, however, in this case the City did not file a suit in equity but at law, and its petition sought an injunction pursuant to the Code rather than the trial court's inherent equitable authority. Given this fact, the City contends that the trial court's discretion was limited by the rule set forth by this court in *Cryns*.

- 6 -

¶ 20        In *Cryns*, the Director of Professional Regulation filed a verified petition for injunctive relief alleging that the defendant, a lay midwife, had violated the Nursing and Advanced Practice Nursing Act (225 ILCS 65/20-75(a) (West 2000)). *Cryns*, 203 Ill. 2d at 266. The section of the statute that authorized injunctive relief provided:

> "If any person violates the provision of this Act, the Director may, in the name of the People of the State of Illinois, through the Attorney General of the State of Illinois, or the State's Attorney of any county in which the action is brought, petition for an order enjoining such violation or for an order enforcing compliance with this Act. Upon the filing of a verified petition in court, the court may issue a temporary restraining order, without notice or bond, and may preliminarily and permanently enjoin such violation ***." 225 ILCS 65/20-75(a) (West 2000).

Addressing the availability of injunctive relief under this provision, this court explained the standard to be applied:

> "Under section 20-75 of the Act (225 ILCS 65/20-75 (West 2000)), the Director is authorized to petition the circuit court for an injunction against any individual who is practicing nursing without a license. Where, as here, the State or a governmental agency is expressly authorized by statute to seek injunctive relief, the traditional equitable elements necessary to obtain an injunction need not be satisfied. *Sadat v. American Motors Corp.*, 104 Ill. 2d 105, 111-13 (1984); see *People v. Van Tran Electric Corp.*, 152 Ill. App. 3d 175, 184 (1987); *People ex rel. Hartigan v. Stianos*, 131 Ill. App. 3d 575, 580 (1985). The State or the agency seeking the injunction need only show that the statute was violated and that the statute relied upon specifically allows injunctive relief. *Sadat*, 104 Ill. 2d at 111-13; see *Midland Enterprises, Inc. v. City of Elmhurst*, 226 Ill. App. 3d 494, 504 (1993). This principle of law is animated by the rationale that because statutes authorizing injunctive relief often do so on behalf of a public official in his or her capacity as the enforcer of a regulatory scheme, 'the violation of such a statute implies an injury to the general public [and] [s]uch injury necessitates the statutory authorization for equitable relief and supplants the traditional equitable pleading requirements.' *Sadat*, 104 Ill. 2d at 113. It is presumed that public harm occurs when a statute is violated. See *Midland*, 226

Ill. App. 3d at 504; *Stianos*, 131 Ill. App. 3d at 580 ('The principle underlying the willingness of the courts to issue statutory injunctions to public bodies to restrain violations of a statute is that harm to the public at large can be presumed from the statutory violation alone'). Once it has been established that a statute has been violated, no discretion is vested in the circuit court to refuse to grant the injunctive relief authorized by that statute. See *Midland*, 226 Ill. App. 3d at 504." *Cryns*, 203 Ill. 2d at 277-78.

¶ 21 *Cryns* recognized the distinction between a suit seeking injunctive relief pursuant to a court's inherent equitable authority and one seeking relief pursuant to a statute. In the latter situation, the equities have, in effect, already been balanced by the legislative body, and that balance is reflected in the policy choices contained within the statute. A court is not free to disregard or "rebalance" the policy determinations made by a legislative body. See, *e.g.*, *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546, 557 (2009). Accordingly, when a trial court is confronted "with a continuing violation of statutory law, it has no discretion or authority to balance the equities so as to permit that violation to continue." Zygmunt J.B. Plater, *Statutory Violations and Equitable Discretion*, 70 Cal. L. Rev. 524, 527 (1982); see also, *e.g.*, 42 Am. Jur. 2d *Injunctions* § 25 (October 2023 Update) ("A statutory request for injunctive relief is governed by the requirements of the statute, and express statutory language supersedes common-law requirements.").

¶ 22 Aims briefly contends that *Cryns* is inapposite because that case concerned the application of a statute rather than, as in this case, municipal ordinances. We disagree. It is well settled that "[a] municipal ordinance has the force of law over the community in which it is adopted and, within the corporate limits, operates as effectively as a law passed by the legislature." *City of Chicago v. Roman*, 184 Ill. 2d 504, 511 (1998). Like a statute, the sewage ordinances at issue in this case were enacted by a legislative body and have the full force of law. Moreover, there has been no suggestion that the ordinances are in some manner unconstitutional or otherwise improper. See, *e.g.*, *Hutchinson v. City of Valdosta*, 227 U.S. 303, 308 (1913) (noting that "[i]t is the commonest exercise of the police power of a State or city to provide for a system of sewers and to compel property owners to connect therewith"). We conclude that *Cryns* applies to the municipal ordinances at issue here.

¶ 23     Aims also cites the appellate court's decision in *Rosenwinkel* in support of its contention that the trial court in this case had the authority to balance the equities. At issue in *Rosenwinkel* was whether the plaintiff, the County of Kendall, was entitled to a mandatory injunction ordering the removal of a grain bin that had been constructed in violation of a county zoning ordinance. *Rosenwinkel*, 353 Ill. App. 3d at 532. Addressing the legal standard to be applied, the appellate court acknowledged this court's decision in *Cryns*. *Id.* at 539. However, the appellate court read *Cryns* as holding that a law authorizing injunctive relief only relieves the governmental body of proving the "three traditional elements" for an injunction, *i.e.*, a lack of an adequate remedy at law, a certain and clearly ascertainable right, and irreparable harm if no relief is granted. *Id.* at 539-40. Thus, according to *Rosenwinkel*, even in those situations where a law authorizes a governmental body to seek a mandatory injunction and a violation of that law has been proven, the trial court must still balance the equities before granting injunctive relief. *Id.* at 539. This is incorrect.

¶ 24     *Cryns* was explicit in holding that, "[o]nce it has been established that a statute has been violated, *no discretion* is vested in the circuit court to refuse to grant the injunctive relief authorized by that statute." (Emphasis added.) *Cryns*, 203 Ill. 2d at 278. Further, *Rosenwinkel*'s conclusion that a trial court must balance the equities, even if a law expressly providing for injunctive relief has been violated, cannot stand. Such a rule would effectively permit a trial court to second-guess the legislative body as to whether a particular regulatory scheme was equitable or otherwise in the best interests of the public, even though such decisions fall squarely within the realm of legislative determinations. See, *e.g.*, *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 62-63 (1990) (it is not for the judiciary to decide the "wisdom or unwisdom of legislative action in determining the means to be adopted to resolve an existing social problem").

         *Rosenwinkel* cited *Midland Enterprises, Inc. v. City of Elmhurst*, 226 Ill. App. 3d 494, 504 (1993), in support of its holding that a trial court is always required to balance the equities. *Rosenwinkel*, 353 Ill. App. 3d at 539. However, as the appellate court below correctly noted, *Midland* does not stand for the proposition that a trial court may engage in an "open-ended balancing of the equities in a case seeking enforcement of a municipal ordinance." 2022 IL App (4th) 220208, ¶ 48. Indeed, *Midlands* was cited by this court in *Cryns* in support of the rule that a trial court has "no discretion" to refuse to grant injunctive relief once it has been

established that a statute authorizing such relief has been violated. *Cryns*, 203 Ill. 2d at 278.

¶ 25    *Rosenwinkel*'s holding that a trial court must balance the equities even under a statute that expressly provides for injunctive relief cannot be reconciled with this court's decision in *Cryns*. Accordingly, to the extent that *Rosenwinkel* conflicts with *Cryns*, it is overruled.

¶ 26    In this case, section 1-41(n) of the Code expressly authorized the City to seek injunctive relief for continuous violations of the City's sewage ordinances, including the failure to connect to the public sewage disposal system. Thus, the *only* question to be determined by the trial court was whether the City had met its burden of establishing a continuous violation (*id.* at 277-78), and the appellate court correctly held that the trial court had no discretion to balance the equities. The judgment of the appellate court reversing the judgment of the trial court is therefore affirmed.

¶ 27                          CONCLUSION

¶ 28    For the foregoing reasons, the judgment of the appellate court is affirmed.

¶ 29    Appellate court judgment affirmed.

¶ 30    Circuit court judgment reversed.