2023 IL App (2d) 230123-U
No. 2-23-0123
Order filed December 19, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE CITY OF GENEVA, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| | ) | |
| Plaintiff and Counter-defendant-Appellee, | ) | |
| | ) | |
| v. | ) | No. 20-MR-241 |
| | ) | |
| PRAVIN PATEL and KOKILA PATEL, | ) | |
| | ) | |
| Defendants and Counter-plaintiffs-Appellants | ) | |
| | ) | |
| (Chicago Title Land Trust Company, | ) | |
| Successor Trustee to the First National | ) | |
| Bank of Geneva, as Trustee U/T/A | ) | |
| May 26, 1987, Defendant-Appellant; | ) | Honorable |
| Eric Nelson, Building Commissioner for the | ) | Divya K. Sarang, |
| City of Geneva, Counterdefendant). | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Trial court's summary judgment order affirmed.

¶ 2    Defendants, Pravin and Kokila Patel, individually and as beneficiaries of Chicago Title Land Trust Co, as Trustee U/T/A May 26, 1987, appeal the trial court's orders granting summary judgment to plaintiff, the City of Geneva (City), on its amended complaint, entering against defendants a judgment in the amount of $34,725, and issuing a permanent injunction.  For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                         A. Administrative Hearing Process

¶ 5    On October 26, 2016, James M. Forni, the City's code enforcement officer, sent defendants a "stop work order" regarding permit number 42782 and construction occurring at their residential property.  Forni explained that the work being performed exceeded what had been approved by the permit.  Further, Forni explained that, according to the City Code of Geneva ("City Code"), before certain work is performed, building code requirements must be satisfied and a permit obtained and, thus, defendants were required to cease construction and, by November 1, 2016, submit a permit application for all work accomplished and any work to be performed.

¶ 6    Around one year after the "stop work order" letter, on September 18, 2017, Forni sent defendants another letter, entitled "Final Notice."  He wrote that, while defendants had met with Eric Nelson, the City's building commissioner, and had been informed that new plans and drawings were required before their project could advance, those amended plans had not yet been received.  Therefore, defendants were to immediately cease all work on the property and, by September 29, 2017, submit a completed building permit application, or the City would be forced to issue a summons for defendants to appear before the hearing officer for local adjudication.  The letter also stated, "Should the City prevail in its case, fines of up to $750.00 per day may be assessed."  Forni closed by noting that, considering the amount of time that had elapsed since

defendants were first notified of these issues, the City needed to seek final resolution "in this potentially dangerous scenario."

¶ 7　　On January 22, 2018, Forni sent defendants another letter, this time noting that, although new plans had been approved, required inspections had not yet been completed. Again, he advised defendants to cease any work on the property and to arrange for inspection by February 1, 2018, reminding them of the possibility for local adjudication and fines to resolve the "potentially dangerous scenario."

¶ 8　　On April 19, 2018, a "Building Code & Nuisance Adjudication" regarding defendants' "failure to comply with building permit as approved" was held by the City's "Code Hearing Division." The template order form signed by the hearing officer was entitled "Certification of Findings, Decisions & Order" and identified the violation with reference to section 10-1-7(a)(7) of the City Code.[1] Defendants were present for the hearing.[2] Forni was listed as the "representative of municipality." The typewritten form also provided, "THIS CERTIFIES that on 19 April 2018, the Hearing Officer for the CITY OF GENEVA ADMINISTRATIVE ADJUDICATION SYSTEM duly entered a Finding, Decision and Order in this case as follows"

---

[1]That section provides that, when a building structure or part or appurtenance thereof is completed in accordance with the building code, the building commissioner shall conduct a final inspection. Further, no such building, structure, or appurtenance shall be occupied or used until a certificate of occupancy has been issued by the building commissioner as provided for by the building code. City Code of Geneva, § 10-1-7(a)(7) (eff. Sept. 21, 2009).

[2]Only Pravin Patel is listed as the respondent on the order form, but, for simplicity, we refer to defendants collectively.

(emphasis in original), then listed the finding of fact as "Compliance/Prehearing" and the compliance date as May 17, 2018, at 7 p.m. In a section for additional orders, a handwritten note read: "[Defendants] must comply with reinspection requirements & permits for second floor. [Defendants] may need to re-open closed work for inspection." The next day, Forni sent defendants a follow-up letter, enclosing a copy of the certificate of findings from the hearing, noting that the matter was continued to May, and that, at that time, defendants would have the opportunity to outline what has been done toward bringing the property into compliance regarding "certain remodel/addition projects."

¶ 9 The May 17, 2018, certification order reflects that the matter was continued. However, defendants were then present for a June 21 hearing. The certification order from that date lists a $100 court cost imposed, a compliance date of July 19, 2018, and the handwritten portion of the order provides, "property remains in violation. [Defendants] explain[] the delay is due to a virus. [Defendants] must show significant progress by next date. $75 /day fine to begin next date." On June 21, 2018, Forni also sent defendants another letter enclosing the order and specifying the next hearing date.

¶ 10 The July 19, 2018, order, however, noted that defendants failed to appear and that the matter was continued to August 16, 2018, with the handwritten order noting, "per day fine continues/commence 07/20/18." Forni sent defendants a letter enclosing the certificate of findings, noting that a fine of $75 per day was imposed, that it was entered after the last hearing they had attended (in June), as well as noting the next hearing date.

¶ 11 The order from August 16, 2018, noted in a typed section that defendants had requested a continuance until September 20, 2018, for complete compliance. Accordingly, that date was listed as the next compliance date. Forni's follow-up letter, dated August 21, 2018, noted, "as was stated

during the 06/21/2018 hearing date with you in attendance, this case now carries a $75.00 per day fine. These fines will continue to accrue until the [C]ity department having jurisdiction has approved all required inspections for all outstanding permits/projects at that same address."

¶ 12    The final order in the record, dated January 17, 2019, listed a fine amount of $100 per week "until cured," as well as a $75 court cost. The order noted that defendants did not appear and listed a compliance date of February 21, 2019. Forni's letter to defendants, dated January 19, 2019, included the order, also noted that the matter had been continued to February 21, 2019, and contained the same language as his earlier letter, noting that fines would accrue until the inspections were completed and approved (but listed the fine as $75 daily, not the $100 weekly).[3]

¶ 13    Defendants never sought administrative or other review of any of the hearing officer's orders. Further, other than the certification orders described above, the record on appeal does not include the record that was before the administrative hearing officer.

¶ 14                                B. Trial Court

¶ 15    On February 18, 2020, approximately 13 months after the last order was issued by the hearing officer, the City filed with the trial court a verified complaint for equitable and other relief.

¶ 16    Later, on October 7, 2021, the City filed a verified, three-count amended complaint (although the City later dismissed count III), summarizing the background and events before the hearing officer and attaching the orders described above. In count I, the City explained that, pursuant to section 11-31.1-11.1(a) of the Illinois Municipal Code,

---

[3]Discovery documents later filed in the case reflect that letters, emails, and other correspondence were exchanged between the City and defendants after February 21, 2019, but it is not clear whether a February 21, 2019, administrative hearing took place.

"Any fine, other sanction or costs imposed, or part of any fine, other sanction or costs imposed remaining unpaid after the exhaustion of, or the failure to exhaust judicial review procedures under the Administrative Review Law shall be a debt due and owing the municipality and, as such, may be collected in accordance with applicable law." 65 ILCS 5/11-31.1-11.1(a) (West 2020).

¶ 17    The City alleged that the administrative hearing officer had issued findings, decisions, and orders in accordance with the City Code and Division 31.1 of the Illinois Municipal Code, which addresses building code violations, and that the period to seek judicial review under the Administrative Review Law had expired. Accordingly, the City alleged that, as entered against defendants by the hearing officer, it was entitled to judgment in the amount of $75 per day (commencing July 20, 2018), and $100 per week (commencing January 17, 2019) through the present. In sum, the City requested that the court enter judgment in its favor and against defendants in the amount of $27,225, plus costs.

¶ 18    In count II, the City relied on section 11-31.1-11.1(b)(2) of the Illinois Municipal Code (65 ILCS 5/11-31.1-11.1(b)(2) (West 2020)), which provides "the court may also issue such other orders and injunctions as are requested by the municipality to enforce the order of the hearing officer to correct a code violation." *Id.* The City alleged that the fine was inadequate to secure abatement of defendants' Illinois Municipal Code violations, and that it was necessary that a temporary and permanent injunction issue, requiring defendants to correct the violations and to restrain future violations permanently, and, if necessary, that a receiver be appointed to bring defendants' property into compliance with the City Code. It added that Forni had determined that the property did not comply with the minimum standards of health and safety set forth by the City Code.

¶ 19    Defendants answered and counterclaimed.  In their answer, in part, they argued that the hearing officer's orders did not comply with the Illinois Municipal Code because they set forth no actual "findings of fact," were not reviewable, since they were not entered in compliance with the Illinois Municipal Code, and, so, the time for reviewing those orders never began.  Further, they argued that the City had not followed any of the procedures required by section 11-31.1-11.1(b) of the Illinois Municipal Code which, in part, required a certified copy of the findings, decision, and order, accompanied by a certification that recites fact sufficient to show that the administrative officer's findings, decision, and order were issued in accordance with the applicable code and municipal ordinance.  Therefore, defendants argued, the City's attempt to enforce the hearing officer's orders was invalid.  In addition, defendants listed permits they had obtained, dates that inspections allegedly occurred, and noted that Forni had never been inside their property.  In their counterclaims, defendants asserted that their property did not meet the definition of a dangerous building under the City Code; that the City exceeded its powers granted by the constitution and filed suit without due notice to defendants of the alleged violations; that the City's "taking" did not include just compensation; and that, without authorization, the City and Nelson failed to issue defendants a permit to install a solar power system on their roof.

¶ 20    The litigation before the trial court lasted roughly three years.  There were *numerous* pleadings and motions, relatively extensive discovery, and the trial court's efforts to encourage a settlement between the parties, identify all items at the home that needed to be fixed, and to have inspections of defendants' property completed, failed.  At one point, defendants issued a subpoena for the hearing officer's records, and the court granted the City's motion to quash that subpoena. Ultimately, the parties filed cross-motions for summary judgment.  Specifically, the City moved for summary judgment on its complaint and on defendants' counterclaims, submitting affidavits

from Nelson and Forni in support. Defendants also moved for summary judgment on the City's complaint.

¶ 21 On February 2, 2023, the court granted the City's summary judgment motion on defendants' counterclaims. It denied defendants' summary judgment motion. At the hearing on the motion, the trial judge noted that she had spent more than one year discussing the issues with defendants and their counsel, and "I just don't know why it doesn't get done. I just don't understand." She explained that she would reserve ruling on the City's summary judgment motion with respect to its complaint for a few more weeks in order to provide defendants "one last opportunity" to comply with the inspections and "give you enough time to get this done. I wish that you would. I wish they would stop wasting their money on litigation and live peacefully."

¶ 22 On March 16, 2023, the court granted the City's summary judgment motion on its complaint. At the hearing, the court asked if there had been any discussions between the parties, and it learned that, while an inspection had occurred, according to the City, it was essentially a preliminary inspection, as there remained items that defendants did not agree to complete, and,

"There are significant plumbing and electrical items that are public safety items that remain open. And importantly, because the defendant[s] [have] completed a project without a permit, *i.e.*, the second-story addition, we need an as-built from a licensed professional, which was part of your order way back in early 2021 and remains open."

¶ 23 Defendants' counsel asked the court if it would "indulge" defendant Pravin, who was present. The court replied,

"[Counsel] if there's anybody who's indulged the defendant in this case, it's—I can't even speak to that. I mean, we've been doing this for so long, and it is very disappointing to see that given so many opportunities to comply with the Court—you all

have to comply with the law, not only the defendant but the Court. The Court is obligated to comply with the law and has to make a decision, and [I] think the time has run out, so we're going to do that today. There's no more time."

With respect to count I, the court entered judgment against defendants in the amount of $34,725. On count II, the court entered a permanent injunction, requiring defendants to correct all building code violations and enjoining them from future violations. The court reserved the issue of appointing a receiver, pending a proper application by the City. Defendants appeal.

¶ 24                                    II. ANALYSIS

¶ 25                               A. Rule 341 Violations

¶ 26    We address first the City's arguments that defendants' brief is rife with Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020) violations, their arguments are "indecipherable," foisting the burden of argument and research on this court, and, thus, that we should find forfeited their arguments. Specifically, the City asserts that defendants' brief fails to: (1) cite the pertinent statute (Rule 341(h)(5)); (2) provide sufficient relevant facts to understand the case (Rule 341(h)(6)); and (3) support arguments with pertinent authority and appropriate record citations (Rule 341(h)(7)).

¶ 27    Compliance with Rule 341 is mandatory. *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12. "This court may, in its discretion, strike a brief and dismiss an appeal based on the failure to comply with the applicable rules of appellate procedure." *Id.* We choose not to find forfeited all of defendants' claims. However, to the extent defendants' brief contains Rule 341(h) violations and those violations foist the burden of argument and research onto this court, we will note as much and find the specific argument forfeited. *Id.* at 297. Indeed, Rule 341(h)(7)'s requirement that the appellant present reasoned argument and citation to legal authority and to specific portions of the record in support of his or her claim of error is "especially important because, when

reviewing a case, the appellate court starts with the presumption that the circuit court's ruling was in conformity with the law and the facts." *McCann*, 2015 IL App (1st) 141291 at ¶ 30.

¶ 28                                    B. Summary Judgment

¶ 29     Defendants argue first that the court erred by entering summary judgment on the City's amended complaint because the orders entered by the hearing officer did not comply with sections 1-2.2-45 and 1-2.2-5.5(b) of the Illinois Municipal Code (65 ILCS 5/1-2.2-45, 1-2.2-5.5(b) (West 2020)), both in the assessment of fines and because the orders did not reflect the hearing officer's findings, decision, and order. Defendants argue that the hearing officer's orders do not tell them what findings of fact were made to support a determination that any violations existed. They argue that because, on their face, the hearing officer's orders did not contain findings of fact, the trial court should have either remanded them to the hearing officer or declared them *void* and unenforceable. In addition, defendants argue that the Illinois Municipal Code provides that the municipality shall not present its case through an employee of the code hearing department but, here, Forni presented the case as the City's code compliance officer. Finally, defendants argue that plain error occurred, because there was no evidence that they committed any City Code violations after January 17, 2019 (*i.e.*, when proofs closed before the hearing officer), and, therefore, the court's February 6, and March 16, 2023, orders, imposing fines beyond that date are in error, where the court had no evidence to support the amount of the accrued fines awarded. In sum, defendants argue that no certification exists that recites facts that would have allowed the court to satisfy itself that the orders issued by the hearing officer complied with the Illinois Municipal Code. According to defendants, the hearing officer's orders are void and unenforceable, in turn rendering the trial court's February 6, and March 16, 2023, orders also void and unenforceable. We disagree.

¶ 30    Summary judgment may be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 2020).  "Issues of statutory interpretation and summary judgment rulings are reviewed *de novo*."  *Hooker v. Retirement Board of Firemen's Annuity & Benefit Fund of Chicago*, 2013 IL 114811, ¶ 15.

¶ 31    Preliminarily, we note that, while sections 1-2.2-45 and 1-2.2-5.5(b) of the Illinois Municipal Code, upon which defendants rely, outline requirements for administrative hearings and findings, the City correctly points out that Division 2.2 of the Illinois Municipal Code does not apply to building code violations and, in fact, *exempts* building code proceedings from its coverage.  Specifically, section 1-2.2-5 provides in its definition of "Code" that, as used in Division 2.2 of the Illinois Municipal Code, the word "Code" means any municipal ordinance *except* for, in part, building code violations that must be adjudicated pursuant to "Division 31.1 of Article 11 of this Act."  65 ILCS 5/1-2.2-5 (West 2020).  Here, the City pursued building code violations and its amended complaint specified that its claims were brought pursuant to Division 31.1 of the Illinois Municipal Code.

¶ 32    Moreover, we conclude that the trial court did not err in granting the City summary judgment pursuant to section 11-31.1-11.1(b) of the Illinois Municipal Code.  We note that the first part of that section provides,

> "*After expiration of the period within which judicial review under the Administrative Review Law may be sought for a final determination of the code violation*, the municipality may commence a proceeding in the circuit court of the county where the municipality is located *for purposes of obtaining a judgment on the finding, decision and*

*order*. Nothing in this Section shall prevent a municipality from consolidating multiple findings, decisions and orders against a person in such a proceeding. Upon commencement of the action, the *municipality shall file a certified copy of the findings, decision and order, which shall be accompanied by a certification that recites facts sufficient to show that the findings, decision and order was issued in accordance with this Division and the applicable municipal ordinance*." (Emphases added.) *Id.* § 11-31.1-11.1(b).

¶ 33 Here, defendants argue that the court erred because the orders issued by the hearing officer did not contain adequate findings, rendering them void. We acknowledge that the administrative orders did not include *detailed* factual findings. However, each order issued by the administrative hearing officer was entitled "Certification of Findings, Decisions & Order." Each order explained, "THIS CERTIFIES that on [the relevant hearing date], the Hearing Officer for the CITY OF GENEVA ADMINISTRATIVE ADJUDICATION SYSTEM duly entered a Finding, Decision and Order in this case as follows" (emphasis in original), and then listed the alleged violation, compliance dates; some orders included additional handwritten findings and orders. There is no dispute that defendants were notified of the hearings, appeared, and had the *opportunity* to present evidence, witnesses, and to obtain counsel.[4] Indeed, we note that some correspondence between

---

[4]The City's website describes the adjudication process:

"A local adjudication hearing is held once a month before an administrative hearing officer. During the adjudication hearing, the code enforcement officer will provide evidence and testimony to support the written notice of violation. The property owner will also be given the opportunity to provide evidence and testimony to support his/her defense. All parties have the right to be represented by legal counsel, to call witnesses, to cross

defendants and the City, preceding the 2019 hearing order, copied defendants' counsel. Thus, although the administrative orders were somewhat perfunctory, they nevertheless reflect that the hearing officer did, in fact, make findings, as evidenced by the handwritten notes, continuances, and/or fines and costs imposed. Further, defendants argue that the City did not comply with other prerequisites contained in section 11-31.1-11.1(b). However, while the City apparently did not prepare a separate "certification," reciting facts to show that the findings were issued in accordance with Division 31.1 and the applicable ordinance, the amended complaint recited the facts that preceded and included the administrative hearings, attached the "certification of findings, decision and orders," and the complaint was verified by Nelson, the City's building commissioner.

¶ 34    With respect to defendants' contentions that the hearing officer's orders are deficient, we also note that we are not reviewing those orders; in other words, we are not conducting an administrative review. Rather, we are reviewing the trial court's decision to grant the City summary judgment under section 11-31.1-11.1 of the Illinois Municipal Code. In fact, while

---

examine opposing witnesses, and to request the issuance of subpoenas by the hearing officer to direct the attendance and testimony of relevant witnesses and the production of relevant documents.

The administrative hearing officer is given the authority to issue a written determination, based on the evidence presented at the hearing, of whether a code violation exists. The City will continue to work with individuals during this process in order to bring a code violation into compliance. However, individuals found liable through the adjudication process may be fined and/or ordered to comply with the City Code." https://www.geneva.il.us/141/Code-Enforcement (last visited Nov. 1, 2023).

defendants could have sought administrative review of the hearing officer's orders, they did not do so. Specifically, the Illinois Municipal Code provides that the hearing officer's findings "shall be subject to review in the circuit court of the county where the municipality is located, and the provisions of the Administrative Review Law *** and the rules adopted pursuant thereto are adopted and shall apply to and govern every action of the judicial review of the final findings, decision and order of a hearing officer under this Division." 65 ILCS 5/11-31.1-11 (West 2020). Thus, to the extent that defendants believed that the hearing officer's orders lacked support or required findings, they failed to timely seek review within 35 days of receipt of the challenged order. See 735 ILCS 5/3-103 (West 2020) ("Every action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision[.]").

¶ 35　　Finally, we also disagree with defendants' argument that, if the orders are defective, they are void, such that they may be challenged at any time and without need for administrative review. Rather, we agree with the City that, even if the hearing officer's orders failed to satisfy the Illinois Municipal Code's requirements, that failure would render them voidable, not void. See, *e.g.*, *Newkirk v. Bigard*, 109 Ill. 2d 28, 36, 39 (1985) (an agency order may be void if the agency lacked jurisdiction over the parties or the subject matter, or if it lacked the inherent power to make or enter the particular order involved; however, where an agency order has not followed the exact letter of a statutory provision, it is merely voidable and subject to attack only through the applicable administrative and judicial review proceedings). Here, defendants argue that the hearing officer's orders did not comply with the Illinois Municipal Code's requirements for findings of fact. This failure, if true, would not render them void, but, rather, voidable, and defendants did not, through

any timely review, challenge them as such. Moreover, although defendants note that the orders reference that they were being entered in accordance with section 1-2.1-8 of the Illinois Municipal Code, which does not apply to non-home-rule municipalities (such as the City), those template orders continued that they were *also* entered pursuant to "other applicable law and the City Code" and, thus, this argument is unpersuasive.

¶ 36 As such, long after the expiration of the period for defendants to seek administrative view, indeed *13 months* after the last order issued, the *City* filed what was, essentially, an enforcement action to collect the judgment. Again, despite defendants' assertions to the contrary, the court here was not conducting an administrative review proceeding and, therefore, did not make its own findings that defendants violated specific City Code provisions. Rather, the statute provides,

> "*if the court is satisfied* that the findings, decision and order were entered in accordance with the requirements of this Division [*i.e.*, Division 31.1 of the Illinois Municipal Code] and the applicable municipal ordinance, *and that the property owner had an opportunity for a hearing* under this Division and for judicial review as provided in this Division: (1) the court *shall render judgment in favor of the municipality and against the property owner for the amount indicated in the findings, decision and order, plus costs.* Such judgment shall have the same effect and may be enforced in the same manner as other judgments for the recovery of money; and (2) the court may also issue such other orders and injunctions as are requested by the municipality to enforce the order of the hearing officer to correct a code violation." (Emphases added.) 65 ILCS 5/11-31.1-11.1(b) (West 2020).

Here, by entering summary judgment in the City's favor, the trial court signified that it was satisfied that defendants received notice of the alleged violations, were given the opportunity to appear and to participate in hearings, received sufficient time to cure the alleged violations, and

that the hearing officer's orders were properly entered in accordance with Illinois Municipal Code requirements. Indeed, approximately *seven years* passed between the City's initial letter to defendants in 2016 and the trial court's 2023 judgment. The record reflects that, in that period, there was significant correspondence between the parties pertaining to defendants' failure to schedule and/or pass inspections to obtain permits, and it is clear from its comments before ruling that the trial court was well aware of the nature of the allegations and defendants' opportunities to cure the alleged violations. We also note that, by filing cross-motions for summary judgment, defendants agreed that only questions of law, not questions of fact, remained. *Martin v. Keeley & Sons, Inc.*, 2012 IL 113270, ¶ 25. As such, based purely on the record, which supported the court's basis for finding satisfied the statute's provisions, it properly determined that section 11-31.1-11.1(b)(1) required it to enter judgment in the City's favor and in accordance with the hearing officer's order.

¶ 37    Defendants next challenge as plain error the $34,725 judgment amount, asserting that no fines should have been assessed after the closing of proofs before the hearing officer on January 17, 2019. We disagree.

¶ 38    First, with few exceptions not applicable here, plain error is generally not a concept applied in a civil action. See, *e.g.*, *Wilbourn v. Cavalenes*, 398 Ill. App. 3d 837, 856 (2010) (as civil trials do not implicate the sixth amendment, application of the plain-error doctrine in civil cases is exceedingly rare and applies only where a prejudicial error is so egregious that it deprived a party of a fair trial and impaired the integrity of the judicial process).

¶ 39    Second, defendants do not offer an amount they *would* deem proper and in keeping with the hearing officer's orders; they offer no alternative calculations or explanations of what portion of the court's judgment should be reduced. Although they argue that the orders did not state a total

amount of a penalty and, thus, the trial court had no statutory authority under section 11-31.1-11.1 to calculate a fine, we disagree. The penalty was one that accrued daily and/or weekly and, therefore, the hearing officer could not have entered a total amount when it issued its decision. Moreover, where section 11-31.1-11.1 gives the trial court authority to render judgment for the City in the amount indicated in the administrative "findings, decision and order, plus costs," that authority inherently includes the ability to calculate the appropriate amount *in the manner* ordered by the hearing officer.

¶ 40    Third, we find inapplicable or distinguishable the cases that defendants cite as authority for their argument that the court could not impose a fine for future violations. For example, *Wilmington Savings Fund Society v. Barrera*, 2020 IL App (2d) 190883, ¶ 19, concerned whether *res judicata* barred subsequent causes of action each time an installment payment was in default. The issue of *res judicata* is not relevant here. Next, in *County of Kendall v. Rosenwinkel*, 353 Ill. App. 3d 529 (2004), this court held that a trial court was not authorized to impose a fine of $500 per week, ongoing even after trial, for the defendants' failure to comply with a zoning ordinance; although each week that the ordinance violation remained uncorrected constituted a separate offense and the court was entitled to fine tenants $500 per week up to the date that trial proofs closed, violation of the ordinance *after* the close of trial had not been proven. *Id.* at 548-50. We think *Rosenwinkel* is distinguishable. Here, although the judgment against defendants included fines for continuing violations even after the hearing officer issued the January 2019 order: defendants did not seek administrative review of the hearing officer's finding that they were, in fact, in violation; the record before the trial court evidenced that they remained in violation; the parties filed cross-motions for summary judgment, establishing that there existed no material questions of fact; and the trial court was, thus, in accordance with section 11-31.1-11.1(b)(1),

required to impose the fine as determined by the hearing officer. In total, the record sufficed to support that defendants remained in violation of permitting and inspection requirements, after the January 2019 order and up to the date the trial court entered summary judgment. Notably, the trial court's judgment did *not* state that fines would continue to accrue after summary judgment. Rather, it entered a set judgment amount.

¶ 41    In sum, we cannot find that the court erred in entering summary judgment in the amount requested by the City, in accordance with the weekly and daily accruing fines ordered by the hearing officer.[5]

¶ 42                        C. Permanent Injunction

---

[5]We note that defendants argue that section 1-2.2-30 of the Illinois Municipal Code (65 ILCS 5/1-2.2-30 (West 2020)) precludes a municipality from presenting its case by an employee from the code hearing department or for the municipality's code compliance officer to be the sole arbiter as to the existence of the building code violation and, thus, that Forni's participation here violated the Illinois Municipal Code and rendered the orders void. Again, defendants rely on Division 2.2 for this argument, which is inapplicable here. Also, Forni presented the City's case, but a different hearing officer issued the decisions. Moreover, as noted above, a failure to follow procedure would render the orders voidable, not void. See *Newkirk*, 109 Ill. 2d at 39. Finally, to the extent that defendants raise other, miscellaneous arguments (such as unclear arguments about the City being a non-home rule municipality), they are undeveloped, violate Rule 341(h) because we cannot clearly assess defendants' claim of error, and, thus, we find them forfeited. See *Velocity Investments v. Alston*, 397 Ill. App. 3d 296, 297 (2010).

¶ 43    Next, defendants argue that the court erroneously entered a permanent injunction, because it failed to balance the equities and relative hardship to the parties. Defendants, relying on *Rosenwinkel*, 353 Ill. App. 3d at 539, note that, even where the traditional elements necessary to secure a permanent injunction are (like here) supplanted by a statute expressly authorizing a governmental agency to seek injunctive relief, a court should still consider the balance of equities. They note that, although the City's complaint alleged that Forni had determined defendants' residence did not meet the minimum standards of health and safety, Forni testified in his deposition that he never made that determination. Further, defendants argue that the injunction is not specific and fails to describe in reasonable detail the acts to be restrained; rather, it broadly orders them to not violate the building code.

¶ 44    "[I]t is well established that where, as here, the government is expressly authorized by statute to seek injunctive relief, the three traditional equitable elements necessary to obtain an injunction *** need not be satisfied." *Id.* The reason for this "is based upon the presumption that public harm occurs when a statute is violated." *Id.* In such cases, the governmental agency needs to demonstrate only that: (1) a statute was violated; and (2) the statute specifically allows injunctive relief. *Id.*

¶ 45    Here, as noted above, section 11-31.1-11.1(b)(2) provides that the court "may also issue such other orders and injunctions as are requested by the municipality to enforce the order of the hearing officer to correct a code violation." 65 ILCS 5/11-31.1-11.1(b)(2) (West 2020). Accordingly, the statute expressly authorized the City to seek injunctive relief, and the court was permitted to enter an injunction. While *Rosenwinkel* provides that, unless the violation of a zoning ordinance is intentional, a court "should" still balance the equities (*Rosenwinkel*, 353 Ill. App. 3d at 539-40), the State is correct that *Rosenwinkel* relied on *Midland Enterprises, Inc. v. City of*

*Elmhurst*, 226 Ill. App. 3d 494, 504 (1993), where, in contrast, the court held that a trial court erred by refusing a municipality a statutory injunction and *applying* equitable principles. Nevertheless, even if we consider *Rosenwinkel*'s provision that, unless the violation is intentional, a court "should" still balance the equities, the record reflects that the court could have reasonably determined that defendants' actions in failing to comply with necessary permits and inspections was, at this point, intentional, such that no balancing of equities was necessary. Further, even if the court were to balance equities, we see nothing particularly burdensome or "inequitable" about an order directing defendants to stop violating the building code when, even if broad, it is, in fact, essentially the position in which all other citizens of the City find themselves. Moreover, it is reasonable to presume the scope of the court's injunction springs from the record before it, and includes those items referenced at the hearing, immediately prior to the order's entry, that required completion and related to an order the court had entered in January 2021.

¶ 46 Finally, defendants have raised disconnected arguments that, although the City pleaded that Forni had determined that defendants' residence did not meet the minimum standards of health and safety, Forni testified in his deposition that he never made that determination. We are not convinced that this alleged discrepancy is of any import to the judgment. Moreover, while Forni may not have personally inspected the home to make such a determination, all of the City's building code requirements establish the minimum standards of health and safety. See City Code of Geneva, § 10-1-4(b) (eff. Sept. 21, 2009) ("Minimum Requirements: The rules and regulations contained in this title set forth requirements which are considered reasonable and are held in every instance to be the minimum for the promotion of public health, safety and general welfare."). Thus, to the extent that defendants were found in violation of City Code requirements, their residence did not meet the minimum standards of health and safety.

¶ 47                                III. CONCLUSION

¶ 48    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 49    Affirmed.